| 99  | 257 |
| 100 | 582 |

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

SCHRIEBER, SONS & CO. v. CITIZENS BANK OF NORFOLK
AND OTHERS.

MARCH 14, 1901.

Absent, Whittle, J.*

1. BUILDING CONTRACT—*Sub-Contractor—Case in Judgment.*—Under the terms of the contract in suit, the owner of the building being erected had the right, as against the contractor and other sub-contractors, to bind himself personally to a sub-contractor for a portion of the work, and deduct the cost thereof from the contract price agreed to be paid to the contractor.

2. MECHANIC'S LIEN—*Sub-Contractor—Extra Work.*—In a contest between the owner of a building and sub-contractor, extra work not covered or contemplated by the original contract, and which has been paid for by the owner, is to be considered a separate and distinct transaction.

3. MECHANIC'S LIEN—*Discount of Contractor's Notes—Assignment.*—As against sub-contractors, it is not error to allow the owner credit for notes discounted by him which were given by the contractor to other sub-contractors for work done or materials furnished, nor. for similar notes held by banks and taken up by the owner, nor for orders drawn on the owner by the general contractor in favor of sub-contractors. Each of such credits represents money paid by the owner for work done or materials furnished for the erection of the building. They are not such assignments or transfers as are prohibited by Act of Assembly, 1895-'6, page 379.

4. MECHANIC'S LIEN—*Reservation of Percentage—Sub-Contractor.*—The reservation by the owner of a percentage of the cost of construction of a building until its completion, with the right to supply any deficiency and deduct the cost from any money due or to become

*Argued before Judge Whittle qualified.

due under the contract, is for the benefit of the owner alone, and not for sub-contractors who may be thereafter employed.

5. MECHANIC'S LIEN—*Sub-Contractors—Personal Liability of Owner—Preferred Claim.*—The owner of a building in course of construction is under no obligation to protect the interest of a sub-contractor unless the latter has complied with the provisions of the statute (Code, sec. 2479, as amended, Acts 1893-'4, p. 523), rendering the owner personally liable to the sub-contractor to the extent that such owner is indebted to the general contractor. Where, however, such personal liability has been duly created, it becomes a preferred claim, and is to be paid in full in preference to the claims of other sub-contractors who have not obtained a like advantage, but have subsequently perfected their liens under section 2477 of.the Code.

Appeal from a decree of the Court of Law and Chancery of the city of Norfolk, pronounced March 28, 1900, in a suit in chancery, wherein the appellee, the Citizens Bank of Norfolk, was the complainant, and the appellant and others were the defendants.

*Affirmed.*

The opinion states the case.

*Cole & Shultice* and *W. J. Overbeck,* for the appellants.

*Walke & Old, Venable & Stebbins, Burroughs & Bro., J. Sydney Smith,* and *Thos. W. Shelton,* for the appellees.

HARRISON, J., delivered the opinion of the court.

In July, 1897, The Citizens Bank of Norfolk entered into an agreement in writing with Frank R. May, a general contractor, for the erection by him of a bank building to cost $95,750.00. In April, 1899, the bank filed its bill in this case alleging that it and numerous tenants had been using and occupying the building since January 19, 1899, though it was not fully completed, there being several matters involving small cost to be attended to. It further alleged that the entire cost of the building had been paid except a balance then in its hands of

$4,444.40, out of which was to be first paid the sums mentioned as necessary to complete the building. It further alleged that a number of sub-contractors had recently filed claims of lien against the building, amounting in the aggregate to $12,043.68, but insisted that such sub-contractors had no claim under the mechanic's lien law either against the land and building, or against the bank, except to the extent of the balance then in its hands. The prayer of the bill was for an account ascertaining and determining the proper amounts due to the several sub-contractors, and a proper application and distribution of the balance in hand among the several parties entitled thereto according to their respective rights.

An answer, to be treated as a cross-bill, was filed by the appellant, setting up a lien for the sum of $5,595.00 under its contract with the general contractor; and also for the further sum of $339.23 for extras claimed to have been furnished directly to the bank upon the order of the architect; and alleging that the bank had improperly disbursed part of the building fund, and should be held to account for a much larger sum than that admitted to be in its hands.

An elaborate report, together with the evidence upon which it was based, was returned, finding that at the time of the institution of this suit there was in the hands of the bank unpaid on the building a balance of $4,444.40, and that, after the completion of the building according to the contract, the bank had in its hands applicable to unpaid claims the sum of $3,636.27, out of which had to be first paid two claims of superior dignity amounting to $1,865.03, and the residue disbursed *pro rata* among nine remaining claimants including the appellant. A decree was entered overruling all exceptions to this report, and confirming the same, which we are now asked to review.

Adverting to the alleged errors in the order of their assignment, the court is of opinion that it was not error to allow the bank credit for the sum of $808.13 paid by it for work done and

materials furnished by Julian C. Smith, a sub-contractor. Smith had been employed by the general contractor to do certain asphalt paving around the building. Being in doubt whether the general contractor would pay him, he declined to undertake the work unless the bank would guarantee the payment of his claim. This the bank was obliged to do in order to have the pavement completed in accordance with the plans and specifications. The contract provided that in case the general contractor failed in the performance of any of his agreements, the owner should be at liberty to supply the deficiency and deduct the cost from any money due or to become due under the contract. This item for the paving done by Smith was clearly covered by that provision.

The court is further of opinion that the bank was not properly chargeable with the sum of $1,069.32 in addition to the oirginal contract price of the buildings. That sum represented the price of work not covered or contemplated by the contract which was paid for by the bank as soon as it was done. It would hardly be claimed, if the work in question had been done by a stranger to the original contract, that the bank should be charged with its cost as if done under the original contract. The case is not different because such work was done by the same person who had the larger contract. It was a separate and distinct transaction, outside of and apart from the original building contract, and therefore not to be considered in connection therewith.

The court is further of opinion that there was no error in allowing the bank credit for the notes held by it which had been executed by the general contractor, and endorsed by the several sub-contractors to whom they were payable, and discounted by the bank for the benefit of the latter. Nor was it error to allow the bank credit for other similar notes taken up by it which were due and payable at other banks. Nor was it error to allow the bank credit for orders drawn upon it by the general contractor in favor of sub-contractors. So far as can be discovered from

the record, every credit here complained of represents money
paid by the bank for work done or materials furnished under
the contract for the erection of the building in question. These
are not, as contended, assignments or transfers of any part of the
debt due or to become due the general contractor by the owner
for the construction of the building, such as are prohibited by act
of Assembly 1895-'6, p. 379. On the contrary, it is the con-
tract price of the building going directly to those who have done
the work and furnished the materials, which is what the act
cited intended to accomplish. The chief contention in this con-
nection is that these payments were made out of the remaining
fifteen *per cent.* of the cost of the building after eighty-five
*per cent.* of such cost had been expended, while under the con-
tract between the bank and the general contractor, it is insisted
that this last fifteen *per cent.* was not due or payable until the
building was completed, and that appellant had the right to rely,
for its protection, upon the bank withholding the same until it
was due. The clause of the contract relied on in support of this
contention is in these words: "And that such price shall be paid
by the owner to the contractor upon the certificate of the
architect, as follows, viz.: At intervals of thirty days measure-
ments shall be made by the architect of the amount of materials
and labor embodied in the building, and payments made to
within fifteen *per cent.* of the value of the same." This provision
was intended alone for the protection of the owner of the build-
ing, and had no reference to sub-contractors who might there-
after be employed. The contract further provided that in case
the general contractor failed in the performance of any of his
agreements the owner should be at liberty to supply the defi-
ciency and deduct the cost from any money due or to become
due under the contract. If the owner had to reserve in his hands
fifteen *per cent.* of the entire cost of the building, until the same
was fully completed, for the ultimate protection of sub-contrac-
tors who had not protected themselves, it would make this last

mentioned provision of the contract nugatory, and leave the owner without the means, in many cases, of finishing the work contracted for. The owner is under no obligation to protect the interest of the sub-contractor except where the latter has complied with the law, and thus put himself in a position to demand protection from the owner. The law has generously thrown around the sub-contractor every safeguard, and provided adequate means for his protection. To secure its benefits, however, the sub-contractor must act. Section 2479 of the Code, as amended by Acts 1893-'4, p. 523, afforded appellant complete protection against loss, but of this no advantage was taken, and the result cannot under any provision of the law be visited upon the owner. The appellant did not perfect its lien until February 21, 1899, and under the express terms of the statute (sec. 2477 of the Code as amended by Acts 1897-'8, p. 488), the lien then perfected could not exceed the amount in which the owner was then indebted to the general contractor, or should thereafter become indebted to such contractor.

The court is further of opinion that there was no error in crediting the bank with the amount due the White Hardware Company and Cook, Clark & Co., as preferred claims to be paid in full out of the balance due from the bank. These two claims had been perfected under section 2479, and constituted a personal liability upon the bank. The bank was not liable for more than the price it had agreed to pay for the building, and it had always kept back more than enough to pay those sub-contractors who had given it notice as required by law, and it was entitled to have the balance thus reserved in its hands applied first to the satisfaction of such claims.

Upon consideration of the whole case, the court is of opinion that there is no error in the decree complained of to the prejudice of appellant, and it must be affirmed.

*Affirmed.*