# Richmond.

## THOMAS & COMPANY, ETC. v. McCAULEY.

### November 12, 1925.

1. MECHANICS' LIENS—*Guarantee by Owner of Lumber Bill—Priority as Against Mechanics' Liens Afterwards Filed—Case at Bar.*—In the instant case the owner of property employed a contractor to build a house for her. The contractor attempted to buy the materials from a lumber company to be used in the construction of the house. The lumber company refused to furnish the materials unless the owner would guarantee the bill. This the owner did with the knowledge of the contractor, she being solvent at the time.

   *Held:* That the owner had the right to guarantee the payment of the lumber bill without notice to other creditors, and that the owner was entitled to credit for the bill so guaranteed as against mechanics' liens filed after the guarantee.

2. MECHANICS' LIENS—*Guarantee by Owner of Lumber Bill—Duty of Owner to Give Notice to Other Contractors.*—An owner of property, erecting a building thereon, is under no obligation to give notice to other contractors of her guarantee to a lumber company of a bill for lumber of the original contractor to be used in the construction of the building, where the transaction took place while the Code of 1919 was in full force and effect and before the passage of the Acts of 1924, ch. 435, p. 658, Code of 1924, sec. 6429a.

3. MECHANICS' LIENS—*Owner's Right to Complete Building where Contractor Fails—Deduction of Cost from Money Due Under Contract.*—Independently of any contract stipulation, where the general contractor fails in the performance of any of his agreements, the owner is at liberty to supply the deficiency and deduct the cost from any money due or to become due under the contract, and section 6432 of the Code of 1919 expressly provides for such right of the owner.

4. MECHANICS' LIENS—*Payment by Owner to General Contractor—Guarantee by Owner.*—As between an owner and mechanics' liens afterwards filed, it is not material whether payment made by the owner to the contractor had been actually made or simply guaranteed, where the owner is abundantly solvent.

Appeal from a decree of the Circuit Court of Albemarle county. Decree for cross-complainant. Complainant and others appeal.

*Affirmed.*

The opinion states the case.

*Hanckel & Hanckel, McNutt & Rinehart, W. O. Fife,* and *Brooks & Grove,* for the appellants.

*Allen, Walsh & Michie, W. F. Long,* and *Gilmer & Graves,* for the appellee.

BURKS, J., delivered the opinion of the court.

This is a controversy, in the main, between mechanic's lien creditors over a fund in the hands of an owner of a building. Incidentally, there is also involved a question as to the extent of the liability of such owner. A number of questions have been raised and discussed by counsel, but it will not be necessary to consider them, as a brief statement of the evidence in the case will show that the case is controlled by *Schrieber* v. *Citizen's Bank,* 99 Va. 257, 38 S. E. 134, which we fully approve and adhere to.

In *Schrieber* v. *Bank, supra,* the Citizens Bank of Norfolk had contracted with one May for the construction of its banking building, at a cost of upwards of $95,000. At the conclusion of the work the bank had in hand some $4,400. Subcontractors had filed mechanic's liens for claims largely in excess of this amount, and the bank brought suit to have the rights of the parties determined. The bank claimed the right to deduct from the amount apparently in its hands certain claims for work and material which had entered into the building, and for which it had paid or

rendered itself liable. These items consisted of paving around the building, the payment for which the bank had *guaranteed* certain notes given by the general contractor to subcontractors and discounted by the bank, other similar notes taken up by the bank which were due and payable at other banks, and orders drawn on the bank by the general contractor in favor of subcontractors. The bank was allowed credit for all of these items, and in the course of the opinion it is said:

"Adverting to the alleged errors in the order of their assignment, the court is of opinion that it was not error to allow the bank credit for the sum of $808.13 paid by it for work done and materials furnished by Julian C. Smith, a subcontractor. Smith had been employed by the general contractor to do certain asphalt paving around the building. Being in doubt whether the general contractor would pay him, he declined to undertake the work unless the bank would guarantee the payment of his claim. This the bank was obliged to do in order to have the pavement completed in accordance with the plans and specifications. The contract provided that in case the general contractor failed in the performance of any of his agreements, the owner should be at liberty to supply the deficiency and deduct the cost from any money due or to become due under the contract. This item for the paving done by Smith was clearly covered by that provision. * * *

"The court is further of opinion that there was no error in allowing the bank credit for notes held by it which had been executed by the general contractor, and endorsed by the several subcontractors to whom they were payable, and discounted by the bank for the benefit of the latter. Nor was it error to allow the

bank credit for other similar notes taken up by it which were due and payable at other banks. Nor was it error to allow the bank credit for orders drawn upon it by the general contractor in favor of subcontractors. So far as can be discovered from the record, every credit here complained of represents money paid by the bank for work done or materials furnished under the contract for the erection of the building in question. These are not, as contended, assignments or transfers of any part of the debt due or to become due the general contractor by the owner for the construction of the building, such as are prohibited by Acts of Assembly, 1895-6, p. 379. On the contrary, it is the contract price for the building going directly to those who have done the work and furnished the materials, which is what the act cited intended to accomplish."

In the instant case the facts are as follows: On October 7, 1922, Mrs. McCauley entered into a written contract with C. V. Lang, doing business as C. V. Lang & Co., to erect for her a dwelling house near the University of Virginia, at the price of $6,500. Of this sum $4,000 was to be paid in installments of $1,000 each at stated times specified in the contract, and the remaining $2,500 on the completion of the job. Shortly after entering into the contract C. V. Lang & Co. made off a bill for the principal part of the materials and lumber to be used in the construction of the house and furnished it to the Charlottesville Lumber Company with request for prices. The parties agreed on the price and the lumber company furnished a small part of the bill. But Lang had a bad reputation for paying his bills and was insolvent. The Charlottesville Lumber Company had previously had trouble about getting their money and had adopted the practice with him of getting a guaranty of payment from the owner.

Accordingly, on October 31, 1922, its representatives went to see Mrs. McCauley and informed her of the situation and told her that they had furnished Lang a small part of the lumber for her house but that they would not furnish any more unless she would guarantee the payment thereof out of funds going to Lang under the contract. She explained her lack of business knowledge, but willingness to do what was right if it did not get her into trouble. Upon assurance that the transaction was all right, she agreed to notify them from time to time as each of the $1,000 payments was made, to pay them out of the last installment of $2,500, and signed the following letter addressed to the Charlottesville Lumber Company: "I will be responsible for the material gotten by C. V. Lang & Company for my residence on University Terrace for an amount not exceeding three thousand dollars ($3,000)." The Charlottesville Lumber Company thereupon furnished the lumber called for by the contract between it and C. V. Lang & Co., amounting to nearly $3,000, upon which Lang made a payment of about $500, leaving a balance of $2,434.69, as of February 1, 1923, due the lumber company. The lumber was used in the construction of the building. Lang & Co. did not finish the construction of the building, but omitted items variously estimated at from $250 to $500.

In April, June and July, 1923, within the time prescribed by law, the appellants docketed mechanic's liens for the amounts severally claimed by them. In April, 1923, the Charlottesville Lumber Company also docketed a claim for the balance claimed by it, and in August, 1923, brought this suit to enforce its mechanic's lien. The bill sets out all of the foregoing facts, and claims priority of payment of its claim out of the $2,500 left in Mrs. McCauley's hands. Mrs.

McCauley answered setting out the facts as stated above, and asked that her answer be treated as a cross-bill against the mechanic's lien creditors. She admitted that she had the $2,500 in her hands, and offered to deposit it subject to the order of the court, and insisted that the bill of the Charlottesville Lumber Company should be first paid out of the $2,500 in her hands; that if any balance was left it should be applied to what was due her for the completion of her house, and that a personal decree should be rendered in her favor against C. V. Lang & Co. for whatever sum was due her. The decree of the trial court was in accordance with the prayer of the cross-bill, and the liens of the other creditors were annulled as clouds on the title to her property.

[1] It will be observed that if the guaranty of Mrs. McCauley to the Charlottesville Lumber Company be upheld as valid, then at the time of the filing of the mechanic's liens of appellants she was not indebted to C. V. Lang & Co. in any amount and hence there was nothing to which their liens could attach. Code, sec. 6428. It is obvious, therefore, that the validity of this guaranty is the chief, if not the only, question in controversy. Its validity is fully established by *Schrieber v. Bank, supra.*

The bill of lumber had been ordered by Lang & Co. and had been accepted by the Charlottesville Lumber Company. The quality, quantity and price thereof had been agreed upon by the parties, and Mrs. McCauley had the right to guarantee its payment without notice to other creditors. Notwithstanding the terms of the contract between Mrs. McCauley and Lang, she could, with his consent, have paid the whole construction price to Lang in cash, or have accepted orders from him in favor of other subcontractors, or have paid his

notes to them for material and supplies, without notice to anyone, and as between themselves, she being entirely solvent, the transaction would be treated as a cash one. In the instant case, the guarantee was made with the full knowledge, acquiescence and approval of Lang. While he did not see the written guaranty, yet he testified that he knew of it "soon after we started to build;" that at the time he made the contract with her he told her that "she was to keep the final payment and pay it to the Charlottesville Lumber Company;" that she agreed to it while the material was being delivered, and before the payment of the first $1,000; that he used the "same system I always do when getting materials from the Charlottesville Lumber Company;" and that Mrs. McCauley is not indebted to him. In Lang's answer to the bill of the Charlottesville Lumber Company, and to the cross-bill of Mrs. Mc-Cauley, he says: "It was understood by this respondent that the payment of said material ordered from the Charlottesville Lumber Company would have to be guaranteed by said Rosa E. McCauley, the amount thereof to be deducted from said contract price of $6,500, thus reducing the amount due this respondent as general contractor under said contract by the amount of the bill of the Charlottesville Lumber Company. This arrangement was carried out."

In any view of the case, Mrs. McCauley is entitled to the credit claimed by her and awarded by the trial court.

[2] Much was said in the argument about the failure of Mrs. McCauley to give notice to other contractors of her guaranty to the Charlottesville Lumber Company. She was under no obligation to do so. All persons have the right to stand on their legal rights. These trans-actions took place while the Code of 1919 was in full

force and effect and before the passage of the act of 1924, chapter 435, page 658. There was not then in force any statute fixing a personal liability on the owner of a building for materials or supplies furnished to a subcontractor. The Charlottesville Lumber Company adopted the suggestion of the revisors in their note to section 6431 of the Code, and sought and obtained a personal contract with the owner.

[3] Counsel point out no substantial difference between the instant case and *Schrieber* v. *Bank, supra.* In the petition it is said: "Your petitioners respectfully represent that this case does not come under the decision of *Schrieber* v. *Bank,* 99 Va., p. 257, 38 S. E. 134, as that case was governed by the terms of the contract between the bank and the contractor, which contract provided, as stated by court at page 260: 'The contract provided that in case the general contractor failed in the performance of any of his agreements, the owner should be at liberty to supply the deficiency and deduct the cost from any money due or to become due under the contract.'" But it is manifest that the owner had this right independent of any contract stipulations, and it is also expressly provided for by section 6432 of the Code.

[4] In the reply brief it is said that in *Schrieber* v. *Bank, supra,* "all of the funds for which said bank was allowed credit had been actually paid and not contracted or promised to be paid." This is error. The opinion shows that one of the large items was for concrete work, the payment for which had simply been *guaranteed* by the bank. But we should not regard it as material whether payment had been actually made or simply guaranteed, where the owner was abundantly solvent.

It is said in the petition that Mrs. McCauley "per-

petrated not only upon Lang, but upon his subcon-
tractors and his material and supply men, a mon-
strous fraud." We find nothing in the record to warrant
this statement.

The decree of the trial court is plainly right and will
be affirmed.

*Affirmed.*