# Wytheville

## Elizabeth L. Nicholas, et al. v. W. J. Miller, Trading as Miller Sheet Metal Works, et als.

June 22, 1944.

Record No. 2804.

Present, All the Justices.

The opinion states the case.

*George S. Harnsberger,* for the appellants.

*Russell M. Weaver,* for the appellees.

GREGORY, J., delivered the opinion of the court.

On August 23, 1940, C. M. Conrad, general contractor, entered into a written contract with Elizabeth L. Nicholas and Georgia W. Nicholas, who will be referred to as the owners, to build for them a duplex apartment house in Harrisonburg, Virginia, at the price, of $5,487.39.

The Harrisonburg Building and Supply Company, Incorporated, supplying materials for the construction of the building under a subcontract with Conrad, the general contractor, refused to extend credit to Conrad, and required the owners to guarantee the payment of its account for any material supplied by it and used in the building. Accordingly, on September 3, 1940, the owners entered into a written agreement which this court, in *Nicholas* v. *Harrisonburg Bldg., etc., Co.*, 181 Va. 207, 24 S. E. (2d) 452, pronounced a guaranty agreement whereby the payment of the account for supplies and materials furnished by the Harrisonburg Building and Supply Company, Incorporated, used in the building, was guaranteed to that corporation by the owners.

After the completion of the building, a controversy arose about the rights of the other materialmen and subcontractors who had also furnished labor and materials for the building. The owners refused to pay to the Harrisonburg Building and Supply Company, Incorporated, the guaranteed amount which they had withheld, and this corporation then brought an action at law against the owners on the contract of guaranty for $1,690.13, representing the total amount due the corporation. A judgment was obtained against the owners for that amount. A writ of error was awarded by this court (see *Nicholas* v. *Harrisonburg Bldg., etc., Co., supra*), and the judgment of the lower court was affirmed. In the opinion rendered by this court, it was expressly held that the owners had guaranteed the account of the Harrisonburg Building and Supply Company, Incorporated, the subcontractor, in order that the building might be completed, and that the guaranty contract was the inducement to that corporation to furnish the materials.

In the meantime, on December 31, 1940, more than three months after the account of the Harrisonburg Building and Supply Company, Incorporated, had been guaranteed by the owners, W. J. Miller, trading as Miller Sheet Metal Works, another subcontractor, who had installed two furnaces in the building, filed a memorandum of mechanic's lien for $414.29, the amount due him, and notice of this lien was

served on the owners on the same date. Other subcontractors timely filed their mechanic's liens. A suit to enforce the mechanic's liens was filed by W. J. Miller, trading as Miller Sheet Metal Works. In this suit the other subcontractors have filed their petitions to enforce their respective liens.

At the time notice was served of the mechanic's lien in favor of W. J. Miller, trading as Miller Sheet Metal Works, to-wit: December 31, 1940, the owners had in their hands a balance of $2,165.69, due the general contractor, Conrad, which included the amount withheld by them for the Harrisonburg Building and Supply Company, Incorporated. After the judgment which was obtained against them on the guaranty contract by the Harrisonburg Building and Supply Company, Incorporated, of $1,690.13, had been paid, there remained in their hands the sum of $475.56, which was not sufficient, by more than $400, to pay and satisfy all the liens of the subcontractors.

The decree of the lower court which is now before us for review, refused to allow the owners credit, as against the other subcontractors, for the $1,690.13, paid on the judgment of the Harrisonburg Building and Supply Company, Incorporated. By the decree, the accounts of the various subcontractors were established and allowed in full, and the building and lot were ordered to be sold, and the proceeds applied to the satisfaction in full of the respective mechanic's liens of the subcontractors, who are the appellees here.

The main question upon this appeal is whether or not the court erred in failing to hold that the subcontractors were limited in their recovery to the balance remaining in the owners' hands after the payment of the guaranteed claim of the Harrisonburg Building and Supply Company, Incorporated. The court, as we have seen, held that they were not so limited.

A well-defined legislative policy in Virginia, as expressed in statutory enactments (Code, sections 6428, 6429, 6429a, and 6432) is that generally the extent of liability of the owner to a subcontractor or subcontractors is limited to

the amount the owner is indebted to the general contractor at the time notice to the owner is given by the subcontractor or subcontractors. This policy likely found its source in what is known as the "New York System", under which the lien of a subcontractor or materialman depends on, and is limited by, the amount remaining due the general contractor at or subsequent to notice by the subcontractor, served on the owner. See 36 Am. Jur., Mechanics' Liens, section 6.

We are not aware of any case in Virginia in which the owner has been held liable to subcontractors enforcing their mechanics' liens for an amount that would exceed the total amount of the general contract price. The owner is not required to pay in excess of the agreed price stipulated in the contract with the general contractor. He is required to pay for the building but once.

We have so applied the rule in Virginia. See *Schrieber, Sons & Co.* v. *Citizens Bank*, 99 Va. 257, 38 S. E. 134; *Thomas & Co.* v. *McCauley*, 143 Va. 451, 130 S. E. 396.

In Burks Pleading and Practice (3rd Ed.), p. 830, the rule is stated thus:

"Where a subcontractor refuses to do work unless the owner will agree to pay him, it seems that, if the contractor cannot have the work done in a reasonable time, and the owner is thus compelled to guarantee bills of subcontractors, the owner is entitled, both as against the general contractor and other subcontractors, to deduct the amounts for which he has thus become responsible."

Our present statute, Code, sec. 6429a (Michie), enacted in 1924 (see Acts 1924, p. 658), provides how the owner or general contractor may be made personally liable to subcontractors and others performing work or supplying materials for a building. The Code revisors of 1919 had previously eliminated the old section 2479 of the Code of 1887, which then provided for the personal liability of the owner. The reason for the revisors' action is found in an explanatory revisors' note to section 6431 of the 1919 Code:

"Section 2479 of the Code of 1887, as amended, dealing with personal liability of owner, has been omitted, thereby taking out of the statute the whole subject of personal liability of the owner. So long as the personal liability of the owner is retained in the chapter, it is practically impossible to administer the mechanics' lien law in such a way as will give information to everybody of the state of the liens, and not do injustice to someone. In practice this section caused much confusion, and, in some cases, injustice. If any person desires to secure the personal liability of the owner, it should be a matter of contract, and there is no necessity for injecting it into the mechanics' lien law.

"The personal liability feature is chiefly desired by materialmen who are unwilling to trust contractors or subcontractors, and are at the same time unwilling to refuse them credit for fear it may affect their business. This should properly be a matter of contract, and the owner ought not to have to bear the onus of responsibility of contractors, or subcontractors whom materialmen are unwilling to credit."

It is therefore seen that the revisors thought the most appropriate and practical means for holding the owner personally liable to subcontractors was through the medium of a contract with the owner, just as was done in the present case. However, the legislature, as we have seen, in 1924 enacted the statute which is now Code, sec. 6429a of Michie's Code, providing for personal liability of the owner under certain conditions. It is perfectly obvious that the statute is not exclusive. The subcontractor can, by mutual agreement with the owner, still have the latter guarantee his account, and if the owner does so, he is entitled to deduct the amount so guaranteed from the contract price, both as against the general contractor and the other subcontractors.

In the case of *Thomas & Co.* v. *McCauley, supra,* the mechanics' liens were filed in 1923, at a time when there was no statute providing for fixing personal liability on the owner. The Code of 1919 was then in effect, and sec. 6429a (1924 Acts, p. 658) had not been enacted. However, that fact does not detract from that case as controlling authority here.

For, as indicated, our present statute fixing personal liability on the owner, section 6429a, does not prohibit an owner guaranteeing to a subcontractor the amount of the latter's account, and deducting that amount from the general contract price, especially when it is reasonably necessary to do so in order to complete the building. This is true, even when it would result in a preference of one subcontractor over another.' (See Code, sec. 6432.)

In *Thomas & Co.* v. *McCauley, supra,* Mrs. McCauley entered into a written contract with one Lang, general contractor, to erect a dwelling house at the price of $6,500. The Charlottesville Lumber Company were to supply the building materials, and they were unwilling to credit the contractor. Accordingly, Mrs. McCauley agreed with its representatives to be responsible for the account of the Charlottesville Lumber Company for materials going into the building, not exceeding $3,000. Lang, the general contractor, defaulted in his contract. Other subcontractors filed mechanic's liens, and the Charlottesville Lumber Company brought suit to enforce its lien, claiming priority of payment over the claims of the other subcontractors. In the court below the Charlottesville Lumber Company was allowed its claim in full, and the owner was allowed to deduct it from the contract price as against the other subcontractors. Upon appeal, the action of the lower court was affirmed upon the authority of *Schrieber, Sons & Co.* v. *Citizens Bank, supra.*

The facts in the *Thomas & Company Case* are almost identical with those in the case at bar, and in our opinion that case is controlling here.

At the time *Schrieber, Sons & Co.* v. *Citizens Bank, supra,* was decided in 1901, and at the time the mechanic's liens there asserted were filed, we had a statute (section 2479 of the Code of 1887) which provided for the personal liability of the owner to subcontractors; a statute very similar to our present section 6429a of Michie's Code. It is apparent from the opinion in that case that the fact that there was such a statute effective then, had no bearing on the case. There,

so far as is pertinent here, the owner had bound itself personally to pay for a portion of the work on the building, and the court held that the owner had the right, as against the other subcontractors, to deduct the amount for which it was bound, from the contract price, and in doing so, the transaction was not an assignment or transfer within the then existing statute, which was similar to our present section 6435. Other questions were presented and discussed in the opinion, but they have no bearing here.

What we have said does not, to any extent, invade the provisions of Code, sec. 6435. There it is provided in part: "Every assignment or transfer by a general contractor * * * of his contract with the owner or of any money * * * coming to him under such contract * * * shall be subject to the liens given by this chapter to laborers, mechanics and materialmen * * * ".

In the case at bar, there was no assignment or transfer by the general contractor. Here there was, as we have already judicially determined, a contract of guaranty, made several months before the liens were filed, between the owner and a subcontractor, with the consent of the general contractor, made necessary by the inability of the general contractor to obtain credit, and also in order to secure the completion of the building, which is permissible under Code, sec. 6432.

In *DeWitt* v. *Coffey*, 150 Va. 365, 143 S. E. 710, DeWitt claimed under a deed of trust which had been executed during the construction of the building, by the owners, to secure one Jackson, general contractor, and which had been assigned, along with the notes secured therein, by Jackson to DeWitt. This court held that the transaction amounted to an assignment, and violated section 6435. It may be inferred, though it is not stated in the opinion, that DeWitt was a third party; that he did not furnish labor or supplies for the building, and that he took the deed of trust and notes for an old debt due him by Jackson. Clearly, the transaction amounted to an assignment under section 6435. The court also held that it violated this part of section 6436:

"Nor shall any lien or incumbrance upon the land, created after the work was commenced or materials furnished, operate on the land, or such building or structure, until the lien in favor of the person doing the work or furnishing the materials shall have been satisfied." The court concluded: "So that when DeWitt received the securities he took them not only with express notice that such an assignment of the fund coming to the general contractor was subject to the liens created by the statute, but that the deed of trust which undertook to secure that debt to the general contractor was also subordinate to the potential liens of the defendant subcontractor for materials furnished or to be furnished, for the construction of the building."

The facts in that case are so entirely different from those we have in the case at bar that it affords no assistance. Likewise, the case of *Coleman v. Pearman,* 159 Va. 72, 165 S. E. 371, is not authority here. The payment there was by the general contractor to a third party who had performed no work, and who had furnished no supplies for the building.

The appellees now invoke here, for the first time, section 6429a, and claim a personal liability on the owners to satisfy their liens in full. They claim priority over the obligation incurred by the owners to Harrisonburg Building and Supply Co., Inc. The record does not show that that section was relied upon by them in the court below. However, it will make no difference in the end whether it is applied or not.

Under section 6432, the owner is given express authority to complete the building or any part thereof if the general contractor fails or refuses to do so, and the amount so expended by the owner shall have priority over all mechanic's liens which have been or may be placed on the building by the general contractor, a subcontractor under him, or any person furnishing labor or materials used in the building. The obligation the owner is thus required to incur in order to complete the building is given an express preference.

Thus, if a subcontractor is unwilling to continue his work on the building because of the credit standing of the

general contractor, under section 6432 the owner may complete the building and may obligate himself to a subcontractor to do so, in order that the work may go on. The amount for which the owner is required to so obligate himself takes priority over all other mechanic's liens.

While it is true under section 6429a, the owner, under certain conditions, may be made personally liable to a subcontractor, yet this liability is not permitted to exceed the sum in which the owner is indebted to the general contractor at the time he receives notice. Such indebtedness excludes the obligation the owner may have been required to incur in order to complete the building. What remains in the owner's hands after deducting such an obligation is applicable to the liens of the subcontractors, under section 6429a. Therefore, the result is the same, whether the subcontractors here proceeded under that section or not.

In the case at bar, after making the deduction for the obligation incurred to the Harrisonburg Building and Supply Company, Incorporated, there remained in the hands of the owners $475.56. This is the amount of the indebtedness due by the owners to the general contractor, and it is the extent to which liability could be imposed on the owners.

Perhaps the lower court, in holding the owners liable for the full amount of the liens of the subcontractors, was misled by the following inadvertent statement in the opinion in *Nicholas* v. *Harrisonburg Bldg., etc., Co., supra*: "The defendant agreed to give plaintiff a preference over the lienors, and this they did at their peril". This went beyond the necessities of the case, for this court had already held the contract one of preference and guaranty, upon which the owners were liable. That was as far as the court could go. It is true this contract has resulted in the Harrisonburg Building and Supply Company, Incorporated, obtaining a preference over the other subcontractors, but such a preference, as we have seen, is permissible under our law. The subcontractors were not before us as parties in that case and, of course, we did not intend to pass upon their rights. Nothing said then could add to or take from such rights as they

may or may not have had at that time, or at any subsequent time.

We are, therefore, of the opinion that the Harrisonburg Building and Supply Company, Incorporated, was entitled to priority in the distribution of the funds remaining in the hands of the owners, and that after deducting the $1,690.13, the residue of $475.56 in the hands of the owners is the extent of their liability, and should be applied ratably to the liens of the appellees.

*Reversed.*