# Richmond

## ELMER S. ANDERSON, AND OTHERS V. J. ELMER WHITE, ETC., AND OTHERS.

November 20, 1944.

Record No. 2823.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Smith & Smith, Swink, Swink & White; T. J. Amelson* and *J. Davis Reed, Jr.,* for the appellants.

*Leigh D. Williams, Eastwood D. Herbert, Michael B. Wagenheim* and *F. J. Dean, Jr.,* for the appellees.

GREGORY, J., delivered the opinion of the court.

Elizabeth Realty Corporation made a contract with W. B. Miller, as general contractor, for the construction of a number of houses, at an agreed price, upon its property situated in the city of Norfolk. Under the terms of the contract the general contractor agreed to furnish all necessary labor and materials for the erection of the buildings.

The general contractor having defaulted in the performance of the contract, the buildings were completed by the owner, and when finally completed there remained in its hands $21,697.92 due under the contract. This amount, together with interest, was paid into court by the owner to be distributed to those entitled to it.

Before the general contractor defaulted he had completed a considerable portion of the work. During the progress of the work, and before his default, the general contractor executed and delivered separate orders, or assignments, upon the owner in favor of the petitioners herein, who were subcontractors on the job. These orders represented the respective amounts due these subcontractors for labor and materials furnished on the job.

In addition to these subcontractors who are the petitioners, there were other subcontractors who furnished labor and materials for the job, but these other subcontractors do not hold any assignments or orders on the owner. They are made defendants to this petition and have duly filed and perfected mechanic's liens against the said property. The petitioners also perfected mechanic's liens against the property.

The assignments in favor of the petitioners were served upon the owner before any of the mechanic's liens were filed.

A chancery suit was instituted and intervening petitions filed by all of the subcontractors for the enforcement of their respective mechanic's liens. The petitioner herein alleged that the owner was personally liable to each of them for the amount of their said assignments, and that they constitute prior claims and liens upon said property and should be paid in full before the payment of any other liens against the property, the amount remaining due on the contract being insufficient to pay all of the subcontractors in full. The priority claimed by the petitioners by reason of the assignments was contested by the owner and by the other subcontractors who did not hold assignments. The matter was referred to Mr. Thomas H. Willcox, a commissioner in chancery, who, among other things, was directed to report upon the validity and priority of all orders and assignments asserted by any party or parties hereto. After taking considerable evidence, the commissioner filed his report in which he held "I am of the opinion and now report that as against parties holding valid mechanic's liens the assignments or orders are null and void, and that the holders of the mechanic's liens are entitled to share pro rata in the funds available".

The petitioners filed exceptions to the report of the commissioner but the court overruled the exceptions and confirmed the report by its decree. It is by this action of the court that the petitioners claim to be aggrieved.

The contention of the petitioners is that the orders and assignments to them from the general contractor constitute equitable assignments *pro tanto* of the funds in the hands of the owner, due at the time of the execution thereof or thereafter becoming due to the general contractor from the owner on the contract price of the buildings. They also contend that upon receipt by the owner of notice of the assignments it thereupon became its duty to make an immediate sequestration of sufficient funds then due or becoming due to the general contractor to insure payment thereof, and that since

there were sufficient funds in the hands of the owner to satisfy all of the assignments, and it having received notice of them before any mechanic's liens were filed, it is contended that all of the assignments are entitled to priority of payment in full before the mechanic's liens of the other subcontractors not holding assignments shall receive any portion of the funds.

The appellees, or the subcontractors holding no assignments, rely upon Code, sections 6435 and 6437 (Michie). Section 6435 reads:

"Every assignment * * * by a general contractor * * * of any money * * * coming to him under such contract * * * and every writ of fieri facias, attachment or other process against the general contractor * * * shall be subject to the liens given by this chapter to laborers, mechanics, and material-men. No such assignment or transfer shall in any way affect the validity or the priority of satisfaction of liens given by this chapter."

And section 6437 reads:

"There shall be no priority among them except that the lien of a sub-contractor shall be preferred to that of his general contractor; the lien of persons performing labor or furnishing materials for a sub-contractor, shall be preferred to that of such sub-contractor; and liens filed by persons performing manual labor shall have priority over material men to the extent of the labor performed during the thirty days immediately preceding the date of the performance of the last labor."

This case seems to be one of first impression in this court, in so far as we are advised. We are not referred to any case in which we have been called upon to decide a question of priorities between liens of mechanics holding assignments on the owner from the general contractor and those holding no assignments.

Mr. Willcox, in an able and comprehensive report, in part made these findings, in which we concur:

"The holders of mechanic's liens who have received no assignments contend that statute (sec. 6435) is controlling. Those who have assignments claim that the statute does not

interfere with the validity and priority of their liens, and they rely in the main on *Schrieber Sons & Co.* v. *Citizens Bank of Norfolk, et al.*, 99 Va. 257; *Thomas & Co.* v. *McCauley*, 143 Va. 451; *D. F. Tyler, et al.* v. *Building Supplies Corp. et al.* (Ended Cases Court of Law and Chancery of the City of Norfolk, 1935, No. 422), and *City Supply Co., Inc.* v. *Harry Lipman, et al.*, (Circuit Court of the City of Norfolk 1924, Ended Chancery Cases No. 2798).

"*Thomas & Co.* v. *McCauley, supra*, followed the Schrieber case on a single point, which is not involved in this controversy. It did not deal with assignments.

"The Schrieber case was decided while Chapter 351, Acts of Assembly, 1895-96 (p. 379) was in effect. At the time the questions in this case arose, the matter was governed by section 6435 of the Code of Virginia.

"Although the above statute deals with the subject of the former Act, it is not a revision or amendment of the former Act, but as said by the revisors in their note:

" 'This is a new section dealing with the effect of assignments. It is taken in part from section 3844 of the West Virginia Code (Hogg, 1913). Assignments are not prohibited, but are made subordinate to the mechanics' lien. It is intended that no assignment made by a general or subcontractor shall in any way affect the rights of other parties arising under the mechanics' lien law'.

■ "I have considered this statute most carefully in view of the decisions of Judges McIlwaine and Hanckel, but I can discover no ambiguity in it and I think it is susceptible of one construction: namely, that every assignment of every kind by a general contractor to any party of any funds due, or to become due, to the general contractor under a contract for the erection of a building is subject to the liens given by Chapter 270 of the Code of Virginia.

"This, in my opinion, is not changed by reason of the fact that the assignees involved are subcontractors. * * * "

And in distinguishing and analyzing the case of *Schrieber, Sons & Co.* v. *Citizens Bank*, 99 Va. 257, 38 S. E. 134, the

commissioner, after a personal inspection of the original record in that case had this to say:

"There were several questions presented to the court in that case, many of which are entirely irrelevant and immaterial to the case at bar, and I will refer only to those which are relevant.

"1. During the progress of the erection of the Citizens Bank Building the general contractor had given several of the subcontractors notes for the amount of money due to each. These notes, in turn, were endorsed by the payees and discounted—some at the Citizens Bank and some at other banks.

"Before any mechanics' liens were filed, the general contractor requested the bank, as owner of the building, to take up those notes and to charge the same against his account. This was done. The subcontractors contended that that was a diversion of funds against which they were entitled to recourse, and that the bank was not entitled to credit the amounts paid on account of said notes against the amount due from it to the general contractor.

"2. During the progress of the work and before any mechanics' liens were filed, the general contractor gave several subcontractors orders on the bank, and all of said orders were recognized by the bank and the sums called for were paid directly to the subcontractors to whom the orders were given.

"The subcontractors who had no assignments contended that the bank was not entitled to credit for the sums so paid because of the Act of Assembly, referred to above, which was then in effect."

The bank was allowed credit for $818.13 for certain paving, the payment of which it had been compelled to guarantee in order to complete the job. The bank was also allowed credit for $1,069.32, which represented the amount paid by it for extra work not embraced in the contract. The court, speaking through Judge Harrison, at pages 260 and 261, said:

"So far as can be discovered from the record every credit here complained of represents money paid by the bank for work done or materials furnished under the contract for the erection of the building in question. These are not, as con-

tended, assignments or transfers of any part of the debt due or to become due the general contractor by the owner for the construction of the building, such as are prohibited by act of Assembly 1895-'6, p. 379. On the contrary, it is the contract price of the building going directly to those who have done the work and furnished the materials, which is what the act cited intended to accomplish. * * * "

It is perfectly obvious from the opinion in that case that the owner had either actually paid the subcontractor at the request of the general contractor prior to the filing of any mechanic's liens, or the owner had become personally liable for such payment.

In the case at bar, the Elizabeth Realty Corporation, the owner, has not voluntarily made itself personally liable to any subcontractor, nor did it pay any subcontractor after the mechanic's liens were filed. There is no controversy between the owner and any subcontractor, or between the owner and the general contractor. The sole controversy upon the appeal is between the subcontractors themselves, those holding assignments claiming priority over those who do not hold them.

In *Thomas & Co.* v. *McCauley*, 143 Va. 451, 130 S. E. 396, Mrs. McCauley, the owner, personally assumed the payment of the account of the Charlottesville Lumber Company, a subcontractor, in order to secure the necessary supplies for the building. The same was true in *Nicholas* v. *Miller*, 182 Va. 831, 30 S. E. (2d) 696. The owner, under Code, sec. 6432, in order to complete the building, after the general contractor has defaulted, may pay a subcontractor for the work he has performed, or he may do the equivalent, namely, make himself personally liable to the subcontractor for his account, and in either event, the amount so expended, or for which the owner has made himself personally liable, is entitled to priority over the other mechanic's liens.

Code, sections 6435 and 6437, parts of which have been previously quoted, are clear and unambiguous. Section 6435 reads "every assignment by a general contractor of any money * * * shall be subject to the liens given by this chapter * * * . No such assignment or transfer shall in any way

affect the validity or the priority of satisfaction of liens given by this chapter," and section 6437 expressly provides that "there shall be no priority among them." This language is so clear that it needs no construction. The assignments or orders held by the petitioners, in our opinion, were clearly prohibited by these statutes in so far as the other subcontractors are concerned, and the petitioners are entitled to no priority by reason of them.

The assignments were given "by a general contractor * * * of money * * * coming to him under such contract * * * ". The statute says "every assignment" shall be subject to the liens given by this chapter. Assignments given to subcontractors for work performed on the building, or supplies furnished, are not excepted. We are not permitted to read such an exception into the statute by judicial construction. There is no ambiguity or vagueness in the language employed by the legislature. Even if we were permitted to read such an exception into section 6435, it would, in that event, conflict with section 6437 which provides "there shall be no priority among them". These statutes, in express terms, clearly bar the petitioners of any priority by reason of their respective assignments.

The decree is accordingly affirmed.

*Affirmed.*