## CIRCUIT COURT OF THE CITY OF NORFOLK

W. O. Grubb Steel Erection, Inc.

    v.

515 Granby, L.L.C., et al.

                Case No. (Civil) CL08-3278

Atlantic Metrocast, Inc.

    v.

515 Granby, L.L.C., et al.

                Case No. (Civil) CL08-3816

International Construction
Equipment, Inc., et al.

    v.

515 Granby, L.L.C., et al.

                Case No. (Civil) CL08-4280

Turner Construction Co.

    v.

515 Granby, L.L.C., et al.

                Case No. (Civil) CL08-5050

Clayton B. Obersheimer, Inc.

    v.

515 Granby, L.L.C., et al.

464

Case No. (Civil) CL08-7529

August 14, 2009

BY JUDGE EVERETT A. MARTIN, JR.

These consolidated causes came on to be heard on May 5 and 6 on 515 Granby L.L.C.'s (the "Owner") plea in bar and Suburban Grading & Utilities' and W. O. Grubb Steel Erection's (the "Subcontractors) motions to overrule the plea in bar. I received the last brief addressing the issues on June 29. The plea in bar is based upon the last sentence of paragraph 1.1 of the contract between the Owner and Turner Construction Company ("Turner") and two statutes, which provide:

> This Agreement and any liability and obligations of the Owner (other than liability and obligations of Owner for Preconstruction Services) shall be subject to and expressly conditioned upon the closing by the Owner, and the initial funding by its lender, of the construction loan (on terms satisfactory to Owner) and Owner shall have no obligation or liability to Construction Manager for any costs for the Construction Phase under this Agreement unless such construction loan closing is completed.

Code of Virginia § 43-11 provides in part:

> then the owner . . . shall be personally liable to the claimant for the actual amount due to the subcontractor or persons furnishing labor or material by the general contractor or subcontractor, provided the same does not exceed the sum in which the owner is indebted to the general contractor at the time the second notice is given or may thereafter become indebted by virtue of his contract with the general contractor. . . .

Code of Virginia § 43-7 provides in part:

> But the amount for which a subcontractor may perfect a lien under this section shall not exceed the amount in which the owner is indebted to the general contractor at the time the notice is given, or shall thereafter become indebted to the general contractor upon his contract with the general contractor for such structure or building. . . . It shall be an affirmative defense . . . to a suit to perfect a lien of a subcontractor that the owner is not indebted to the general contractor. . . .

### The Subcontractors' Motions to Overrule

I should first consider the Subcontractors' motions to overrule the plea in bar. The first ground of the motions is the clause "or shall thereafter become indebted to the general contractor" in Va. Code § 43-7 and the Owner's continuing efforts to obtain a loan. Courts must decide cases on the evidence at the time of trial, not what the evidence might be at some future time. Courts do award future damages, but only on the preponderance of the evidence produced at trial.

The evidence at the hearing on May 5-6 established to my satisfaction that the Owner has made great efforts to secure financing for the project. Its efforts have been unsuccessful. The large hole in the ground at the corner of Granby Street and Brambleton Avenue and the evidence about the current conditions of the credit market convince me that financing will not be obtained and Granby Tower will not be built. The evidence also established that the Owner has not terminated the contract for its convenience.

The Subcontractors also allege the plea in bar ignores the legislative purposes of Va. Code § 43-7 because it is intended to protect an owner against having to pay twice and here the Owner is trying to avoid paying once. It is true the Supreme Court has held that an owner is not to be required to pay for the building more than once. *Nicholas v. Miller*, 182 Va. 831, 30 S.E.2d 696 (1944). However, when a statute is free from ambiguity, its plain meaning is to be accepted and the courts are not to write new words into it. *Porter v. Virginia Elec. & Power Co.*, 183 Va. 108, 31 S.E.2d 337 (1944). The affirmative defense of Va. Code § 43-7, upon which the Owner relies, states unambiguously "It shall be an affirmative defense . . . to a suit to perfect a lien of a subcontractor that the owner is not indebted to the general contractor. . . ." Section 43-11 contains a similar provision. The Subcontractors would have

me add to those statutes "provided the owner has paid the general contractor the contract price less credits and offsets." The General Assembly could have so provided. It has not.

I deny the Subcontractors' motions to overrule the plea in bar.

## The Plea in Bar

Turner claims that when the contract is considered as a whole, the Owner is obligated to pay. It also claims that the Owner has waived the defense of paragraph 1.1 of the contract or is estopped from relying on it.

## The Contract in Toto

Turner claims that paragraph 1.1 ought not to trump other provisions in the contract, specifically paragraphs 5.1 (compensation) and 7.1 and 7.1.3 (progress payments). Turner is correct that a contract is to be construed as a whole, that effect is to be given to every provision if possible, that seemingly conflicting provisions ought to be harmonized if that can reasonably be done, and that no clause ought to be treated as meaningless if any reasonable meaning consistent with the other parts of the contract can be given to it. *Ames v. American National Bank,* 163 Va. 1, 38-39, 176 S.E. 204, 216-17 (1934).

I find that the three paragraphs of the contract on which Turner relies, which are reprinted at pages 13-14 of Turner's brief and need not be set out here, can be harmonized with paragraph 1.1 to give effect to all. After the Owner had received initial funding of the construction loan, it would be obligated to pay Turner and to make progress payments. It is Turner's proposed interpretation of the contract, which would impose an unconditional obligation on the Owner after it issued a notice to proceed that would render a clause, that is, paragraph 1.1, of no effect. By its express terms paragraph 1.1 applies to the "Construction Phase."

## Waiver

The facts upon which Turner claims a waiver or estoppel are largely the same and the facts in this case are, for the most part, undisputed. Turner does not contend the Owner expressly waived its defense under paragraph 1.1, but that it did so impliedly. To establish a waiver Turner must establish by clear, precise, and unequivocal evidence that the Owner had "knowledge of the facts basic to the exercise of the right and the intent to relinquish that right." *Virginia Polytechnic Institute, etc. v. Interactive Return Service, Inc.,* 267 Va. 642, 651-52, 595 S.E.2d 1, 6 (2004). The Owner only disputes the second element.

Turner bases its claim of waiver on the Owner's issuance of the notice to proceed, its directions to continue the work, and its approval of payment applications. Having observed the witnesses, their demeanor, and after having reviewed their testimony, I find as a matter of fact that the Owner did not intend to relinquish its right by these actions. I find the Owner issued the notice to proceed in the expectation its loan commitment would be funded, an expectation Turner shared. (Tr. pp. 39-40, 269-71, 349-50, 383-85.) In the spring of 2007, neither the Owner nor Turner saw the dark clouds over the financial horizon. Money was cheap, credit was easy, and the good times would never end. Well, they did.

Furthermore, the issuance of a notice to proceed cannot, under the terms of the contract, be a waiver. By its express terms, paragraph 1.1 applies to the "Construction Phase." The "Construction Phase" began upon the Owner's acceptance of Turner's "Guaranteed Maximum Price" and the issuance of the notice to proceed. Exhibit 112, paragraph 2.3.1.1.

I find the Owner issued further directions to continue the work in the hope it would secure a loan. With respect to its execution of payment applications, each application conspicuously states, "issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract." Furthermore, Mr. Gaddams's testimony that he approved these applications so Turner could be paid quickly after the loan was funded (Tr. pp. 244-45) is completely credible.

*Estoppel*

To establish an estoppel in the absence of fraud or deception Turner must prove by clear, precise, and unequivocal evidence that the Owner made a representation upon which it reasonably relied and that in reliance on the representation, it changed its position to its detriment. *Stewart v. Lady*, 251 Va. 106, 112-13, 465 S.E.2d 782, 785 (1996); *Dominick v. Vassar*, 235 Va. 295, 298, 367 S.E.2d 487, 489 (1988). There is no issue of detriment. There are millions of dollars of detriment.

The Owner never represented its construction loan had been funded. (Tr. p. 302.) The only representation of financial ability it made before issuing the notice to proceed was a commitment letter (Turner's Exh. 16) from which the amount of the loan and its term had been redacted. Given the size of the Granby Tower project and the Owner's limited prior development experience, both of which Turner knew (Tr. pp. 12-13, 307-08, 416-17), I find Turner did not act reasonably in relying on the commitment letter, especially given its rights under paragraph 3.1.2 of the contract. After the issuance of the notice to

proceed, the Owner informed Turner of the delay in funding, its lender's having reneged on the commitment, and its efforts to arrange funding from other sources. (Tr. pp. 50-51.)

Turner does not appear to claim it relied upon representations regarding the loan. The representations upon which Turner specifically relies are the approvals of the applications for payment. I do not believe these were misrepresentations for the reasons discussed above regarding waiver. Nor do I believe any reliance was reasonable. The Owner was created for this project. (Tr. pp. 6-8.) Turner knew the project could not be financed unless the Owner received a loan. (Tr. pp. 307-08.)

There is another principle of the law of estoppel that defeats Turner's claim.

> It is essential to the application of the principles of equitable estoppel, or estoppel *in pais*, that the party claiming to have been influenced by the conduct or declarations of another to his injury, was not only ignorant of the true state of facts, but had no convenient and available means of acquiring such information, and where the facts are known to both parties, and both had the same means of ascertaining the truth, there can be no estoppel.

*Lindsey v. James*, 188 Va. 646, 659, 51 S.E.2d 326, 332 (1949). At any time after the issuance of the notice to proceed, Turner could have requested further proof of the Owner's ability to pay for the work. It did not do so. Turner's right to have reasonable evidence that financial arrangements had been made to fulfill the Owner's obligations under the contract pursuant to paragraph 3.1.2 was a "condition precedent to commencement *or continuation* of the work." (emphasis added). It is true that paragraph 3.1.2 imposed an obligation on the Owner, but it also granted a valuable right to Turner.

I sustain the plea in bar. Mr. Gray shall prepare an order dismissing 515 Granby, L.L.C., from the five actions stated at the beginning of this letter, releasing the mechanics' liens sought to be enforced, and dismissing with prejudice and striking from the docket CL08-7529 as the only claim asserted therein is to enforce the mechanic's lien and no breach of contract claim is made.

I recognize this result may cause serious hardship to some subcontractors and materialmen on the Granby Tower project. My duty, however, is to construe the statutes and contract as written, not as some might wish they had been written and not to produce a result some might find fair or just.