# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## NATIONAL MUTUAL BUILDING & LOAN ASS'N v. BLAIR.

### JULY 5, 1900.

#### Absent, Riely, J.*

1. FRAUD—*Delay—Acquiescence—Waiver.*—Great punctuality and prompt-
   ness of action is required of one who seeks to avoid a deed on the
   ground that it was obtained by fraud. Upon discovery of the fraud,
   or of facts or circumstances from which knowledge thereof would
   be imputed to him, he must act without delay. Unnecessary delay,
   though short of the act of limitations, will generally bar equitable
   relief. If by reason of such delay the rights of innocent third
   parties have intervened, or the position of even the wrong-doer is
   changed to his prejudice, the right to repudiate will be deemed to
   have been waived.

2. SPECIFIC PERFORMANCE—*Change of Circumstances—Delay.*—Where
   there has been a change of circumstances or relations of parties,
   which would render either an execution or rescission of a contract
   a hardship to the defendant, and this change grows out of an
   unexcused delay on the part of the complainant, the change and
   delay together will constitute a sufficient ground for denying
   equitable relief.

3. VENDOR AND VENDEE—*Assumption of Lien—Release.*—If the purchaser
   of real estate assumes the bonds of his vendor as a part of the
   purchase price, and secures the same by a deed of trust on such
   real estate for the protection of his vendor, the said bonds being
   already secured by a prior deed of trust on the same real estate,
   the release of the first deed of trust operates as a release of the
   second deed of trust also.

4. RECORDATION — *Purchasers — Notice.*—As only purchasers without
   notice can take advantage of a failure to record, such failure cannot
   affect a purchaser who has actual notice.

---

*Judge Riely was prevented by sickness from attending this term.

Appeal from two decrees of the Circuit Court of Roanoke city, pronounced May 15, 1899, and December 20, 1899, in a suit in chancery, wherein the appellee was the complainant, and the appellant and others were the defendants.

*Reversed.*

The opinion states the case.

*Cocke & Glasgow,* for the appellant.

*A. A. Phlegar* and *Scott & Staples,* for the appellee.

Harrison, J., delivered the opinion of the court.

Without expressing an opinion upon the question raised by the demurrer, but conceding, for the purposes of this case, that the appellee has a right to be heard, we are of opinion that, upon the merits of the case presented by this record, she cannot prevail.

By deed of August 20, 1890, J. M. Watts sold and conveyed to Mary O. Willmeth a lot in the city of Roanoke, and took from the grantee a deed of trust, securing to himself the payment of two interest-bearing purchase-money notes, each for $2,333.33. On the margin of this deed of trust the following release is recorded:

"I hereby release the lien of the deed of trust on the property herein conveyed, the amount secured therein having been satisfied.

"Given under my hand, this 20th June, 1891.

"J. M. WATTS.

"Attest:

"W. F. Bryant, Deputy Clerk."

On October 23, 1890, Mary O. Willmeth sold and conveyed

this lot to Junius B. Fishburne, who assumed the payment of the two notes secured thereon to J. M. Watts.

On March 25, 1891, Junius B. Fishburne sold and conveyed part of the same lot to Mary M. Simmons, who assumed, as part of her purchase money, the payment of the two notes secured thereon to J. M. Watts. Contemporaneously with this deed, the grantee executed a deed of trust to secure the grantor, as appears from the following clause of the deed:

"In trust to secure Junius B. Fishburne, the payment of the sum of $7,666.66, and interest, unpaid purchase money on above property, said sum being evidenced by one note of Mary M. Simmons, bearing even date herewith and payable, with interest, to said Fishburne, thirty days from date, in the sum of $3,000, and also two notes drawn by Mary O. Willmeth, dated August 20, 1890, and payable one and two years from date to James M. Watts, each in the sum of $2,333.33, with interest, the payment of which two notes the said Mary M. Simmons has assumed."

On the margin of this deed of trust the following release is recorded:

"The note herein described, for the sum of $3,000, payable to me thirty days after its date, has been fully paid, and I hereby acknowledge the receipt of same.

"Given under my hand this 28th day of May, 1891.

"JUNIUS B. FISHBURNE.

"Attest:

"W. F. BRYANT, D. C."

On the 16th day of May, 1891, Mary M. Simmons conveyed this lot to George J. Peet in trust to secure the appellant association a loan made by it of $5,000.

On June 16, 1891, Mary M. Simmons gave a deed of trust on this same lot to secure James M. Watts one of the notes for $2,333.33, executed to him by Mary O. Willmeth, August 20, 1890, the other of said notes having been paid off and discharged; the deed of trust stating on its face that the note secured had been "made by Mary O. Willmeth and assumed by Mary M. Simmons."

On July 20, 1893, Rush U. Derr, who had been substituted as trustee in the deed securing the appellant, sold the lot in question, and conveyed the same to appellant.

After this sale and conveyance, nothing appears touching these transactions until the 19th day of August, 1897, when the bill in this cause was filed, claiming that the second note executed by Mary O. Willmeth to J. M. Watts was due and unpaid, and that the same was assigned by Watts on the 10th day of December, 1896, without recourse, to C. C. Ellis, who had, on the 21st day of December, 1896, assigned the same without recourse to the complainant, Gertrude Blair, who is the appellee here.

The substantial allegations of the bill are:

First. That the release of J. M. Watts, dated June 20, 1891, endorsed on the margin of the deed of trust dated August 20, 1890, from Mary O. Willmeth to secure J. M. Watts the two notes of $2,333.33 each, had been secured by fraudulent representations made to Watts by Rush U. Derr, agent and attorney for the appellant building association.

Second. That the Fishburne deed of trust, dated March 25, 1891, also secured the note asserted by appellee, and that the lien of that deed had not been released as to said note, and was still a valid security therefor; and,

Third. That the deed of trust given to secure the appellant association was acknowledged by the grantor before Rush U.

Derr, who was alleged to be the attorney for the association, and was therefore void as to the debt set up by the appellee.

The prayer of the bill is that the release made by Watts June 20, 1891, on the margin of the deed of trust of August 20, 1890, be set aside and annulled as having been obtained by fraudulent misrepresentations and concealment on the part of the appellant association, through its agent and attorney, Rush U. Derr; that the note asserted by appellee be declared to be a valid, subsisting lien upon the property in question, superior to the appellant association, or any other person; and that said property may be sold to satisfy the same.

J. M. Watts, the original beneficiary of the claim here asserted, is the only witness to prove the alleged fraud. The case as presented by his testimony is that he held the deed of trust of August 20, 1890, upon the property; that Rush U. Derr, the attorney for appellant, came to his house several times to urge and persuade him to release his lien; that he finally yielded, and made the release and took a new deed of trust to secure the bond here set up; that Derr told him that the transaction did not alter his position, and that he would still have the first lien. From the record, Watts appears to be an intelligent business man, and it is difficult to understand what was, in his view, to be accomplished by the apparently useless performance of releasing one first lien to immediately put upon record another of the same dignity; and this when he knew that appellant was lending money on the property, and had, as he says, always understood that a building and loan association would not lend money unless they had a clear title. This opinion, however, need not be prolonged to consider whether or not Watts was induced by false representations to execute the release, for if he was, his subsequent conduct would preclude a recovery.

It is well settled that where a party desires to repudiate a transaction upon the ground of mistake or fraud, he must, upon the discovery of the fraud, or upon the discovery of facts and

circumstances from which such knowledge would be imputed to him, assert his remedial rights with diligence and without delay. To delay instituting judicial proceedings, although for a less period than that prescribed by the statute of limitations, may be, and generally will be, regarded as an acquiescence, and this may be, and generally will be, a bar to any equitable remedy. Great punctuality and promptness of action by the deceived party, upon his discovery of the fraud, is required. Unnecessary delay after such knowledge will defeat the equitable relief. Pom. Eq. Juris., Volume II., sections 817, 897, 917.

"Acquiescence or delay for a length of time after a man is in a situation to enforce a right, and with a full knowledge of the facts, is, in equity, cogent evidence of a waiver and abandonment of the right." * * * "But as soon as a man, with full knowledge, or, at least, with sufficient notice or means of knowledge of his rights, and of all the material circumstances of the case, freely and advisedly does anything which amounts to the recognition of a transaction, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time, and knowingly and deliberately permits another to deal with the property, or incur expense, under the belief that the transaction has been recognized, or fully and advisedly abstains for a considerable lapse of time from impeaching it, there is acquiescence, and the transaction, although originally impeachable, becomes unimpeachable in equity. Nor will the mere notice or assertion of a claim, unaccompanied by any act to give it effect, keep alive a right which would be otherwise barred." Kerr on Fraud and Mistake, pages 299, 301, 311.

In accordance with many previous decisions by this court, it is said in the recent case of *Hurt* v. *Miller*, 95 Va. 32: "A party who intends to repudiate a contract on the ground of fraud, should do so as soon as he discovers the fraud; for if, after the discovery of the fraud, he treats the contract as a subsisting contract, or if, in the interval whilst he is deliberating,

an innocent third party has acquired an interest in the property, or if, in consequence of his delay, the position even of the wrong-doer is affected, he will be deemed to have waived his right of repudiation. And whenever a party to a contract has a right to elect whether he will avoid it, his election may be manifested by acts as well as words, and, when once made, is final, and cannot be retracted."

In the case at bar, it appears that in June, 1892, about one year after the release in question was made, J. M. Watts knew that appellant had the first lien, and that he held a second lien. He knew that Mrs. Simmons had bought the property and given appellant a deed of trust upon it. He kept himself informed as to the manner in which the dues to the association were being paid. He knew that default had been made in the payment of the dues, and that the association had advertised the property under its deed of trust to be sold in June, 1893. He practically admits that he requested a postponement of the sale, and knew that it would take place on the 20th of July, 1893. He contemplated buying the property to save himself, but finally abandoned the idea, because with a second mortgage he thought he would lose. He permitted the association to become the purchaser of the property, and to receive a deed therefor, and to hold title for more than four years without a suggestion, so far as the record shows, of the claim now set up. Nor is J. M. Watts now seeking to enforce said claim. On the contrary, he sold the bond in question, amounting, with interest, to more than $3,000, without recourse, to C. C. Ellis for the paltry sum of $27, who sold it in a few days thereafter to the appellee. It is inconceivable that Watts would have parted with a bond for that amount, for such a consideration, if he had believed that there was any valid ground for making the claim now asserted by his assignee. His whole course in the matter shows an acquiescence in the superior right of appellee, and a purpose not to assail or attempt to impeach that right.

It further appears that the situation and circumstances of the parties to the alleged fraudulent release have materially changed during the long period of inaction and acquiescence by Watts. Mary M. Simmons and Rush U. Derr, the only two persons who could meet and explain the charge of fraud now made, are dead. The property has depreciated to less than one-third of its former value, and Mrs. Simmons, the debtor of appellee, died insolvent. The rule is general that, where there has been a change of circumstances or relations which would render either an execution or rescission of a contract a hardship to the defendant, and this change grows out of an unexcused delay on the part of the plaintiff, the change and delay together will constitute a sufficient ground for denying equitable relief. *Darling* v. *Cumming*, 92 Va. 521; *Hurt* v. *Miller*, 95 Va. 32.

The appellee can occupy no better position than her assignor. Inasmuch, therefore, as J. M. Watts is estopped by reason of his laches and acquiescence to impeach the validity of the release of June 20, 1891, made by him, his assignee is also denied the right to call that transaction in question.

The contention that J. M. Watts is entitled to the benefit of the Fishburne deed of trust, dated March 25, 1891, is not tenable. The clause relied on for this position has been already quoted. It is clear that the parties to that deed were not securing Watts. He already had a deed of trust upon the same property. In his purchase, Fishburne had assumed the Watts debt, and the reference to it in the trust deed of March, 1891, was merely to recognize the assumption of the same debt by Mrs. Simmons, and to protect Fishburne in the event that he should be called upon to discharge the Watts lien before Mrs. Simmons had fulfilled her obligation to pay the same. In releasing the lien of his own deed of trust, Watts stated of record that the amount secured thereby was satisfied. The debt was at that time owned by Watts, and was in his possession, and when he marked it satisfied, it was also discharged as to Fish-

burne; and the deed of trust taken for his protection was satisfied as to such debt as effectually as if the endorsement of satisfaction had been made thereon.

It is further contended that the deed of trust in favor of the appellant association was acknowledged before Rush U. Derr, the attorney for the association, and was therefore not properly recorded; that not being properly recorded, the deed of trust securing appellee, though subsequent in time, and subsequent in recordation, had become by operation of law a first lien upon the premises. It is not necessary to express an opinion as to the validity of this acknowledgement. One object of recordation is to give notice. Under the statute, only purchasers without notice can take advantage of a failure to record. In this case, it abundantly appears that Watts had notice of the deed of trust in favor of the appellant, and hence, if the acknowledgement were invalid, it could not affect the right of priority between the parties to this suit.

For these reasons, the decree appealed from must be reversed and annulled, and this court will enter such decree as the lower court should have entered, dismissing appellee's bill, with costs.

*Reversed.*