**Kingdon GOULD, Jr., Appellant,**

v.

**DISTRICT NATIONAL SECURITIES CORPORATION et al., Appellees.**

**No. 15447.**

United States Court of Appeals
District of Columbia Circuit.

Argued March 7, 1960.

Decided April 14, 1960.

Mr. John J. Sexton, Washington, D. C., for appellant.

Mr. Edmund L. Jones, Washington, D. C., with whom Mr. Howard F. Roycroft, Washington, D. C., was on the brief, for appellees.

Before BAZELON, WASHINGTON and BURGER, Circuit Judges.

WASHINGTON, Circuit Judge.

In 1959 the plaintiff-appellant purchased 20 shares of common stock in the defendant-appellee company (a Virginia corporation).  He then instituted a class action against the corporation and its officers and directors.  Appellant alleged that voting trustees for the common shareholders had illegally transferred the voting rights of the common shareholders to the preferred shareholders, that the present directors had been invalidly elected by the preferred shareholders, and that liquidation of the defendant corporation was imminent.  He asked that a receiver be appointed to manage the affairs of the corporation until a valid board of directors could be elected, and that the corporation and the individual defendants be enjoined from taking any action to liquidate the corporation.  The District Court gave summary judgment against the plaintiff-appellant, on the ground of laches.  This appeal followed.

It appears that the defendant corporation was organized in 1927 as an affiliate of the now defunct District National Bank of Washington, D. C.  The share-

---

1.  The formal order denying the motion to vacate sentence was entered March 2, 1960, and an appeal therefrom is now pending.

holders of the Bank became the common shareholders of the defendant corporation, contributing a total of $10,000 to the latter's capital, but did not receive share certificates. Instead, the certificates of bank stock were endorsed to show a beneficial interest in an equivalent number of shares of common stock of the defendant corporation under the terms of a trust agreement, pursuant to which three voting trustees were given the right to vote the stock. Substantial capital was later raised by the sale of cumulative 7% preferred stock. No dividends were paid on the preferred stock, and in 1939 the voting trustees voted an amendment of the certificate of incorporation which transferred the voting power to the preferred stockholders.

The amendment so adopted [1] was filed for record, pursuant to Virginia law, with the Virginia State Corporation Commission and the Clerk of the Circuit Court of Arlington County, Virginia, where the corporation had its principal Virginia office. The record does not show that any other official notice of this amendment was given the common shareholders, but there is no specific showing of fraud or concealment. Shortly after adoption of the amendment the common stockholders themselves by a vote of 7634½ shares out of a total of 10,000 took action to terminate the voting trust. The reasonable assumption then to such of them as were not on notice of the charter amendment would have been that the voting power was returned from the voting trustees to them. Thereafter, at least, ordinary diligence would demand that they take steps to protect their rights when they were not accorded the opportunity of voting their stock at annual stockholders' meetings,[2] and when inquiry would have revealed that the directors were being elected by the preferred stockholders. The public record of the charter amendment was available to all the common stockholders, including appellant's predecessors in interest, to ascertain the facts at all times, whether or not it is to be deemed constructive notice of the amendment to those stockholders who did not reside in Virginia. Cf. Mount Vernon Sav. Bank v. Wardman, 1949, 84 U.S.App.D.C. 343, 344, 173 F.2d 648, 649; Chavis v. Gibbs, 1956, 198 Va. 379, 382, 94 S.E.2d 195, 197. Clearly, these shareholders failed to exercise reasonable diligence in protecting their interests. And of course appellant, who acquired his common stock only in

---

1. The certificate of amendment recited, *inter alia*, that on December 14, 1938, the Board of Directors of the corporation had passed a resolution resolving that it was advisable to amend the certificate of incorporation so as to confer exclusive voting power upon the preferred stockholders; that after 10 days' notice to all stockholders, a stockholders' meeting was held on January 10, 1939; that the total 10,000 shares of common stock were represented at the meeting in person and by proxy; and that the proposal to amend the charter recommended by the directors was laid before the stockholders' meeting and was adopted by a vote of 10,000 shares. Whether the common stockholders had actual notice of these matters does not appear.

2. Plaintiff-appellant states that stock certificates were issued to the common stockholders only after the voting trust was terminated and argues that those persons who did not apply for and receive their certificates never had notice of their rights as common stockholders. Plaintiff-appellant says that as late as 1957 stockholders holding some 2,000 shares had not received certificates, and that at present some 560 shares are unclaimed. But such stockholders are not entitled to any special treatment in deciding the question of laches. They, as well as the other common stockholders, had evidence prior to 1939 of their ownership of the stock in the form of endorsements on the certificates of District National Bank stock owned by them. Further, the corporation's letter to common stockholders dated January 23, 1939, requesting that they consent to the termination of the voting trust and advising that if the required number of consents was received new certificates in lieu of those standing in the names of the voting trustees would be issued in the names of the owners, was sent to all the stockholders, including those who had not applied for or received their new certificates at the time this suit was filed.

1959, stands in no better position than his predecessors in interest.

There must also be considered the interests of the preferred shareholders, some of whom may have purchased their shares after the charter amendment,[3] in part perhaps because of the voting rights, and who may be without notice of any sort that the action of the voting trustees may have been illegal. Surely they should not be put to the necessity of proving the validity of the trustees' action twenty years after it occurred. The voting trustees and their attorneys are now dead, and their reasons for transferring voting power to the preferred stockholders—or for their acts or omissions in other respects—cannot readily be ascertained. The present record is silent on the matter. Cf. Brown v. McLanahan, 4 Cir., 1945, 148 F.2d 703, 159 A.L.R. 1058. The preferred stockholders, moreover, appear to have contributed all of the corporate capital, except for the $10,000 received from the common stockholders, and they had received no dividends on their 7% cumulative stock at the time they obtained the voting rights.

Considering all the circumstances, it is clear that even if the voting trustees breached their trust in adopting the charter amendment in 1939, a conclusion that cannot be reached on the record here made, the interests of the preferred shareholders would be significantly jeopardized by permitting a common shareholder to assert his claims after twenty years have passed and all parties to the allegedly illegal acts have died.[4] We agree with the District Court that the common shareholders, including appellant, are barred by laches from attempting to void the 1939 charter amendment.

Plaintiff-appellant's request for an injunction against liquidation of the corporation rests on the premise that the present Board of Directors of the corporation was illegally elected by the preferred stockholders. This premise is invalidated by our decision on the first point.[5]

The judgment is therefore

Affirmed.

---

3. Appellees state, without contradication, that 37.8% of the preferred stock has been acquired by purchasers since 1939.

4. See Holmberg v. Armbrecht, 1946, 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743; Landell v. Northern Pac. Ry. Co., D.C.1954, 122 F.Supp. 253, affirmed 96 U.S.App.D.C. 24, 223 F.2d 316, certiorari denied, 1955, 350 U.S. 844, 76 S.Ct. 85, 100 L.Ed. 752; Naselli v. Millholland, 1951, 88 U.S.App.D.C. 237, 188 F.2d 1005; Mount Vernon Sav. Bank v. Wardman, 1949, 84 U.S.App.D.C. 343, 173 F.2d 648.

5. We note in this connection that a Virginia corporation may be dissolved only with the consent of "the holders of more than two-thirds of the outstanding shares of the corporation," and that the "holder of each outstanding share of the corporation shall be entitled to vote thereon, whether or not entitled to vote thereon by the provisions of the articles of incorporation." Virginia Code, § 13.1–81 (1950), as amended. Appellees state that the common stockholders, as well as the preferred, would be entitled to vote on any proposal of dissolution.