# CIRCUIT COURT OF THE CITY OF WINCHESTER

H. M. Brooks

v.

James L. Lum, II, et al.

July 5, 2000

Case No. (Chancery) 00-13

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on June 29, 2000, for trial on the issues of who was the owner of certain real property. Lum and Brooks appeared in person with their counsel. Although Henri Rowe filed an answer to the Bill of Complaint, he made no subsequent appearance in this case. Evidence was heard and argued.

Upon consideration of the evidence, the Court has decided that H. M. Brooks is the owner of the property in question.

## I. *Findings of Fact*

The following facts are found by the greater weight of the evidence.

The Plaintiff is a man of considerable accomplishment. He has a Ph. D. in psychology, and he owns over thirty different properties, many of which he rents. His real estate holdings are so considerable that he employs a property manager to manage them for him.

For many years, the Plaintiff and his sister, Ann Brooks Rowe, lived together in Winchester, Virginia. The Plaintiff's sister was also educated, she graduated from high school and attended art school in Massachusetts, but her income, compared to the Plaintiff's, was meager, and the plaintiff assisted Ann Rowe and her family financially through most of her later life.

Mrs. Rowe had one child, Henri B. Rowe, who is a defendant in this case. Henri Rowe is also highly educated, and the Plaintiff financially assisted Henri Rowe in most of his educational endeavors. Unfortunately, Mrs. Rowe and her son became estranged, and Henri Rowe did not visit his mother during the last eight years of her life, nor did he attend her funeral.

In late 1993, Mrs. Rowe suffered a major stroke which partially paralyzed her, but left her mentally intact. Mrs. Rowe received a small social security benefit and rental income from the property at issue in this case. In May 1994, the Plaintiff prepared the following document, which Mrs. Rowe signed before a notary on June 1, 1994:

> 100 West Leicester St.
> Winchester, Virginia
> May 25, 1994

TO WHOM IT MAY CONCERN

Because of my sudden illness and I am not sure what I will have to face in the days to come, I want to make sure that my brother, H. M. Brooks, will be paid for what he has done for me over the long span of fifty years or more. For putting my son, Henri Brooks Rowe, through Sacred Heart Academy, under graduate school at Shephard University, and Graduate School at the University of Virginia. He has aided me with medical coverage when there was no money, provided me with food, heat, and everything that gave me mental and physical security. I hereby pay him for these services rendered in the form of all of my personal and real property regardless of where it may be located. I know that he will give guidance, care and understanding, to the rest of the family, as he has done for me.

> ANN BROOKS ROWE
> "x"
> (Her Mark)

When Mrs. Rowe executed this document before the notary public who acknowledged it, she referred to it as a document or letter. Mr. Brooks readily admitted that when he prepared this document that he did not think that it was a deed, but he now takes the position that the legal effect of the document is that of a deed, because its intent and effect was to convey all of Mrs. Rowe's interest in her real estate to him, which was what Mrs. Rowe wanted. The Plaintiff kept this document in his possession, and he never attempted to record it or otherwise make it public until this litigation. For the past six years, Brooks has managed the property in question, paid the water and sewer bills, paid the real estate taxes, entered into leases with tenants, maintained the property, and collected the rents.

On March 7, 1997, Mrs. Rowe died intestate owning 428 North Kent Street and 587 North Kent Street. At the time of her death, 587 North Kent was highly dilapidated and could not be rented, but there were two apartments in 428 North Kent Street, which were rented under written leases for $255 and $260 per month. The real estate assessments on the two properties in question total $37,000. After Mrs. Rowe's death the Plaintiff Brooks continued to rent the subject property as he had when Mrs. Rowe was alive.

Henri Rowe apparently did not return to Winchester until December 1999, when he executed an Affidavit of Intestacy, which was recorded in the current Will Book in the Winchester Clerk's Office, indicating that he claimed this property as the sole heir and that he was the owner of 428 North Kent Street and 587 North Kent Street.

After recording the affidavit of intestacy, Henri Rowe shortly thereafter placed a "For Sale" sign on the property. On the weekend of January 15, 2000, the tenants in 428 North Kent immediately went to Mr. Brooks's property manager and advised her that Henri Rowe had been on the property claiming that he owned it and that he had placed a "For Sale" sign on the property. The property manager advised the tenants that the property was not for sale, and the "For Sale" sign was removed from the property.

On January 19, 2000, Brooks filed this present action. He also filed a lis pendens with his suit, but for some reason the lis pendens was placed in the file of this case, but it was not recorded in the deed book and it was not indexed until February 4, 2000.

Henri Rowe became aware that the Defendant Lum owns several rental properties in the general area, and Henri Rowe contacted James Lum and asked Lum whether he was interested in the properties, and Lum said that he was.

Rowe and Lum went to the properties sometime in the third or fourth week of January 2000, but the tenants in possession in 428 North Kent Street,

refused to permit them to enter the premises. These tenants had written leases with Brooks, and they immediately reported the attempted entry to Brooks's property manager. Rowe explained to Lum that he had inherited the property from his mother, that he has been out of the area for a long time, and that these alleged tenants did not recognize him as the owner and were in effect "squatters." Despite having never seen the interior of 428 North Kent Street. Lum initially offered Rowe $5,000.00 for the two properties, 428 and 587 North Kent Street. Rather curiously, this offer was refused, but Rowe agreed to sell both 428 North Kent and 587 North Kent for $4,000.00, "if he could be paid in cash next week." Lum agreed to this, and on February 1, 2000, Lum purchased the two properties from Henri Rowe, paying Rowe in cash, not by check, and a deed conveying the property to Lum was recorded in the Clerk's office.

After February 1, 2000, when Brooks learned that Lum claimed that he had purchased the property, Lum was added as a defendant to this suit.

## II. Conclusions of Law

Real property has always been highly prized in both this country and the Commonwealth of Virginia. "In no country in the world is the love of property more active and more anxious than in the United States . . . ." Alexis de Tocqueville, *Democracy in America*. Consequently, statutes have long existed in Virginia governing the ways that real property may pass from one person to another: by will, Virginia Code § 64.1-45.1 *et seq.*; by intestacy, Virginia Code § 64.1-01 *et seq.*; by deed, Virginia Code § 55-48 *et seq.*; by certain contracts Virginia Code § 55-95; and by adverse possession, Virginia Code § 8.01-236.

While the May 25, 1994, document has a testamentary flavor, it does not comply with the statute of wills, so it is not a will, and there is no claim of a contract to make a will or of adverse possession by Brooks.

The May 25, 1994, document is not in the customary form of a deed, and when it was prepared by Mr. Brooks, he did not think that it was a deed, nor was there any evidence that Mrs. Rowe thought it was a deed, but they both thought that, as between them, the document conveyed all of Mrs. Rowe's property to Brooks and that Mrs. Rowe's North Kent Street properties were thereafter Brooks's.

Deeds are to be liberally construed to effect the intent of the parties, as the Supreme Court stated in *Albert v. Holt*, 137 Va. 5, 9-10 (1923):

The general rule is that a deed must be upheld if possible. Indeed, it has been said to be an elementary principle that every deed, if possible, be made operative, and that the law desires to sustain the validity of this class of instruments wherever it can. The true principle, and one entirely in accordance with modern jurisprudence, is, that all instruments shall be so construed as to pass an estate, when such was the intention, and it will be presumed from the making of a deed that the grantor intended to convey some property by it. The courts are, therefore, liberal in construing deeds so as to give them effect, and a deed untechnical, ungrammatical, and totally at variance with all recognized rules of orthography, may be valid if there are sufficient words to declare clearly and legally the maker's meaning . . . .

A deed is a "written instrument, signed, and delivered, by which one person conveys land . . . to another." *Black's Law Dictionary* (5th ed. 1979). If it is first determined that a document was intended to be a deed, then great liberality is to be given in construing it, but this principle of liberal construction cannot be used to transform an instrument, which is otherwise deficient in conveying an interest, into a deed.

In *Lim v. Choi*, 256 Va. 167, 171-72, 501 S.E.2d 141 (1998), the Supreme Court reviewed the principles governing the construction of an instrument purporting to convey title and stated:

The requirements for a deed are "competent parties, a lawful subject matter, a valuable consideration, apt words of conveyance, and proper execution." *Morison v. American Ass'n, Inc.*, 110 Va. 91, 92, 65 S.E. 469, 470 (1909). Lim argues that the Memorandum lacks consideration and is, therefore, not a valid deed. Choi, however, contends that the Memorandum's language regarding Lim's refusal to assume responsibility for the mortgage payments is an implied promise by Choi to continue paying the mortgage. Thus, according to Choi, his implied assumption of the mortgage payments constitutes adequate consideration. However, we do not need to decide whether adequate consideration exists because the Memorandum lacks any words or language demonstrating an intent to convey property and is, therefore, not a valid deed.

A writing need not be in any particular form to constitute a deed. *Albert v. Holt*, 137 Va. 5, 8, 119 S.E. 120, 121 (1923). Nonetheless, a document purporting to convey title must contain operative words

manifesting an intent to transfer the property. *See Morison*, 110 Va. at 92-93, 65 S.E. at 470. In *Albert*, this Court addressed the validity of a deed in which the grantors did "give, bargain, and sell" the property at issue. *Albert*, 137 Va. at 7, 119 S.E. at 121. The grantors argued that the deed lacked words of conveyance and was, therefore, defective. In rejecting that argument, this Court noted that while Code § 5162 (now Code § 55-48) used the term "grant" in providing the form for a deed of conveyance, it was not an "indispensable requisite" to a valid deed. *Id.* at 9, 119 S.E. at 121. Thus, the statutory form was not "invariable." *Id.* at 8, 119 S.E. at 121. The Court then examined the deed's language and found "the intention to 'grant' . . . so manifest . . . that no other construction could be put upon it." *Id.* at 10, 119 S.E. at 122. Therefore, use of technical words or strict compliance with the form in Code § 55-48 is not necessary to effect a transfer if the language used "plainly shows" on the face of the document a clear intent to convey title. *Morison*, 110 Va. at 92, 65 S.E. at 470.

To determine whether an intent to convey exists in the present case, we examine the Memorandum's language, and, in doing so, construe that language liberally so as to give effect to the parties' intention "if there are sufficient words to declare clearly and legally the maker's meaning." *Albert*, 137 Va. at 10, 119 S.E. at 122. *We find no words in the Memorandum indicating an intent by Lim to transfer her interest in the Property to Choi.* Rather, the Memorandum is replete with contemporaneous statements by Lim regarding her belief as to the Property's current status. Lim claims that Choi is the owner of the Property, that she is not responsible for the mortgage, and that she is not involved in any financial matters concerning the Property. However, unlike the deed at issue in *Albert*, at no point in the Memorandum does Lim express an intent, through words of conveyance or otherwise, to transfer her interest in the Property to Choi. Thus, the Memorandum is void of any language indicating an intent to convey, and, *finding no words of conveyance, we will not "rewrite [a] deed to express an intention that is otherwise indiscernible." Walker v. Bowman*, 227 Va. 209, 214, 315 S.E.2d 206, 209 (1984). [Emphasis Added.]

The plaintiff argues that, even if the parties did not think that the document was technically a deed, nonetheless, it has the legal effect of a deed. He contends that the document identifies the parties and the property and that the

use of the phrase "I hereby pay him for these services rendered me in the form of all of my personal and real property regardless of where it may be located" is tantamount to a conveyance, so the document contains all the requirements of a deed. One meaning of "pay" is "to compensate for goods, services or labor." *Black's Law Dictionary* (5th ed. 1979). Payments may be made by money, by goods or property, or by services. In this case there was no contract between the parties, and Brooks assisted his sister and her family because of his benevolence for his sister and her son. However, it is clear from the document that Mrs. Rowe intended to pay all of her property to Mr. Brooks, so it would appear that the May 25, 1994, document is in effect a deed of gift.

In the instant case, the parties used the word "pay," which is synonymous with a transfer of a benefit, which in this case was the possession and ownership of real property. It is the use of the word "pay," denoting a present transfer of ownership that distinguishes the instant case from *Lim v. Choi*. Moreover, while not mentioned in the *Lim v. Choi* decision, Virginia Code § 55-51 expressly provides that:

> Any deed, or a part of a deed, which shall fail to take effect by virtue of this chapter shall, nevertheless, be as valid and effectual as binding upon the parties thereto, so far as the rules of law and equity will permit, as if this chapter had not been enacted.

Therefore, as between the Plaintiff Brooks and Mrs. Rowe, the May 25, 1994, document was sufficient to pass the property from Ann Rowe to Brooks, and the document bars the claim of any person who had actual or constructive notice of this document or of Mr. Brooks's claim of ownership, which brings us to the issue of whether Lum was a *bona fide* purchaser for value who took without notice of Brooks's claim of ownership.

The filing of a lis pendens is governed by Virginia Code § 8.01-268. The filing of a lis pendens is merely a notice to a third party of pending litigation which may affect the property. *Bray v. Landergren*, 161 Va. 699, 713, 172 S.E.2d 252 (1934). The effect of the lis pendens is governed by statute, and the present statute provides that the lis pendens "shall not affect a subsequent *bona fide* purchaser . . . except from the time . . . [that it] . . . is admitted to record in the clerk's office . . ." and that it "shall not be deemed recorded unless and until indexed as required by law." Virginia Code § 8.01-268. Sidney F. Parham, Jr., *A Virginia Title Examiner's Manual* (1973), pp. 218-19, states:

A *bona fide* purchaser of real estate for valuable consideration without actual notice of lis pendens or attachment is not bound by the same until and from the recordation of the memorandum . . . .

An essential part of the recordation process is indexing in the name of the person whose estate is intended to be affected thereby, and the present statute so provides. In doing so, it incorporates the judicial construction of a former statute. *See Vicars v. Sayler,* 111 Va. 307, 68 S.E. 988 (1910).

In *Vicars v. Sayler, supra,* at 311, the Supreme Court construed the predecessor to the present lis pendens statute and held that "the recording of the memorandum [of lis pendens] in the deed book and indexing the same in the manner in the section are necessary to the complete docketing of the lis pendens." Although the lis pendens in this case was filed in the Clerk's office before Lum recorded his deed, the lis pendens was neither recorded in the deed book nor indexed as required by the statute until after Lum recorded his deed; therefore, the mere filing of the lis pendens in the Clerk's Office was not record notice to Lum.

The duties of a *bona fide* purchaser for value with respect to matters recorded in the Circuit Court Clerk's Office is clearly stated in *Ransome v. Watson's Admr.,* 145 Va. 669, 676, 134 S.E. 707 (1926):

An intending purchaser was not required to do more than to examine the public records in order to ascertain the state of the recorded title, and when he found this complete he could purchase with safety *unless he was affected with notice of defects not disclosed by the record.* The object of the Registry Acts is to give notice, but, of course, if a purchaser knows of defects in the title of his vendor, he takes the title subject to such defects, however perfect the recorded title may be.

In *Chavis v. Gibbs,* 198 Va. 379, 383, 94 S.E.2d 195 (1956), the Supreme Court discussed the notice required of a purchaser:

In *Burwell's Adm'rs. v. Fauber et als.,* 21 Gratt. (62 Va.) 446, 463, President Moncure, speaking for the Court, said: "Purchasers are bound to use a due degree of caution in making their purchases, or they will not be entitled to protection. Caveat emptor is one of the best settled maxims of the law, and applies exclusively to a purchaser. He must take care, and make due enquiries, or he may not be a *bona*

*fide* purchaser. He is bound, not only by actual, but also by constructive notice, which is the same in its effect as actual notice. . . . *He has no right to shut his eyes or his ears to the inlet of information, and then say he is a bona fide purchaser without notice.*" [Emphasis added.]

When the purchaser has actual knowledge that there are persons in possession of the property being purchased who dispute the seller's title, he has a duty to inquire about the circumstances of that possession. *Ely v. Johnson*, 114 Va. 31, 75 S.E. 748 (1912) (purchaser on notice as to possession and use of land by another). As stated in 58 Am. Jur. 2d, *Notice*, § 21:

Possession of land is notice to the world of every legal or equitable right that the possessor has therein. It is a fact putting all persons on inquiry as to the nature of the occupant's claims, as well as the claims under whom he occupies.

"Under the [recording] statute, only purchasers without notice can take advantage of a failure to record." *National Mutual Building & Loan Association v. Blair*, 98 Va. 490, 498, 36 S.E. 513. "Such a failure cannot affect a purchaser who has actual notice." *Chavis v. Gibbs*, 198 Va. 379, 383, 94 S.E.2d 195 (1956). In *Chavis v. Gibbs*, 198 Va. 379, 385, 94 S.E.2d 195 (1956), the Supreme Court stated "whatever fairly puts a person on inquiry is sufficient notice where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained."

In this case, the tenants in possession physically barred Henri Rowe and Lum from entering the property, and Henri Rowe told Lum that the parties in possession did not recognize him as the owner. The specifics of the contract between Henri Rowe and Lum were also highly unusual: close on this property within a week and pay me cash, and I will sell it to you for one ninth of its assessed value. These facts are sufficient to put a reasonably prudent person on notice that someone other than Henri Rowe may have had an interest in the property being purchased. All Lum had to do was ask the tenants who do you believe owns this property, and they would have referred him to Mr. Brooks's property manager with whom they had written leases.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that:

1. The document signed by Ann Brooks Rowe on May 25, 1994, has the effect of a deed and shall pass all interest that Ann Brooks Rowe had in 428 North Kent Street and 587 North Kent Street at that time to Complainant, H. M. Brooks, so that the title to those two parcels of real property is now fully vested in H. M. Brooks to the exclusion of any interest of Henri B. Rowe or James L. Lum, II.

2. The rents paid to the Clerk pursuant to this Court's earlier order shall be paid to the Plaintiff.