KENNETH O. THOMPSON

V.

AIR POWER, INC., ET AL.

Record No. 931542

September 16, 1994

Present: All the Justices

*Christopher C. Nolan (Adams, Porter & Radigan,* on brief), for appellants Kenneth O. Thompson, Trustee; Spencer R. Stouffer, Trustee and Ken Thompson Properties Joint Venture.

*Frederick H. Kruck, Jr. (Matricardi, Kruck & Moylan,* on brief), for appellants Junius S. Morgan, Trustee; Fred J. Rice, III, Trustee and American Security Bank, N.A.

*David Hugh Boyd* for appellee Air Power, Inc.

*James D. Fullerton (Cowles, Rinaldi & Arnold,* on brief), for appellees A & P Water and Sewer Supplies, Inc.; Virginia Precast Corporation and Vulcan Materials Company.

JUSTICE LACY delivered the opinion of the Court.

In this appeal, we consider a series of challenges to the enforcement of four mechanics' liens filed by subcontractors against improved property.

In 1989, Kenneth O. Thompson and Spencer R. Stouffer (collectively Thompson) owned a 141.31763-acre tract of land (the property) in Prince William County, which they decided to develop into a residential subdivision called River Ridge.[1] Thompson contracted with a general contractor, Land Works, Ltd., for the

---

[1] Thompson and Stouffer were trustees under a recorded land trust deed, holding title for Ken Thompson Properties Joint Venture.

construction of streets, sewers, and related utility structures. Land Works, in turn, contracted with Air Power, Inc. to perform drilling and blasting work. Land Works also contracted with Vulcan Materials Company (Vulcan), Virginia Precast Corporation (Precast), and A&P Water & Sewer Supplies, Inc. (A&P), to provide quarried stone, precast concrete structures, and pipe, respectively, for the construction of the subdivision's water and sewer system.

In the fall of 1990, Land Works defaulted on payments to these four subcontractors. Air Power, A&P, and Precast filed their memoranda of liens in September 1990 and Vulcan filed its memorandum a month later. Land Works filed a petition in bankruptcy on September 27, 1990. In April 1991, A&P, Precast, and Vulcan obtained an order from a bankruptcy court releasing them from the automatic stay imposed under the bankruptcy code upon filing of the petition, and filed their enforcement actions, naming Land Works as a defendant. Air Power's memorandum of lien and enforcement action did not name Land Works as a defendant.

Thompson filed a demurrer to Air Power's enforcement action, claiming that Ken Thompson Properties Joint Venture was a necessary party to the suit and had not been named as a defendant. The trial court sustained the demurrer and dismissed the action. Air Power appealed that decision and, on November 6, 1992, this Court reversed the judgment of the trial court, reinstated the enforcement action, and remanded the case for further proceedings. *Air Power, Inc. v. Thompson*, 244 Va. 534, 422 S.E.2d 768 (1992).

On remand, the subcontractors' enforcement suits were consolidated. Following a two-day bench trial, the trial court entered an order reinstating Air Power's mechanic's lien, and holding that all four subcontractors' liens were valid and enforceable against the property.

Thompson raises three assignments of error on appeal: (1) that the trial court erred in reinstating Air Power's lien and applying it retroactively because the property had been sold to a bona fide purchaser for value prior to the lien's reinstatement; (2) that the liens of A&P and Precast are unenforceable because the suits to enforce the liens were filed beyond the six-month limitations period established in Code § 43-17; and (3) that the trial court erred in ruling that the subcontractors' mechanics' liens can be enforced against the property under Code § 43-7, because there were two separate and distinct contracts between Thompson and

Land Works and Thompson is not indebted to Land Works on the contract under which the subcontractors' work was performed. We consider these assignments in order.

## I. REINSTATEMENT OF AIR POWER'S LIEN

Air Power's mechanic's lien was released by the trial court order dismissing Air Power's enforcement action on December 19, 1991. Although Air Power appealed this decision, it did not seek a stay of the proceedings or other relief to prevent execution of the court's judgment. The order releasing the lien, along with the certificate of release, was filed in the deed records on January 18, 1992. Therefore, when Virgrun A Corporation (Virgrun) purchased most of the subject real property[2] at a foreclosure sale on March 5, 1993, Air Power had no mechanic's lien of record against the property.

Under these circumstances, Thompson argues that the trial court erred in reinstating Air Power's lien against the property retroactively because, as a matter of law, the enforcement suit could not proceed in the absence of a perfected lien against the property and because the property had been sold to a third-party purchaser for value without notice.

We have held that, under certain circumstances, a court has the authority to reinstate a previously released lien, and, upon reinstatement, the lien relates back to the time of its initial filing, except to the extent it adversely affects the rights of a bona fide purchaser for value without notice. *Fox v. Templeton*, 229 Va. 380, 386, 329 S.E.2d 6, 9 (1985). While *Fox* only addressed reinstatement of a lien in the event of fraud or mistake, we believe that the holding of *Fox* should be extended to the circumstances of this case. If a lien dismissed by a trial court could not be reinstated when an appellate court determined that the trial court was in error, the appellate process would be ineffective insofar as providing relief to the successful litigant.

This Court's mandate in reversing the judgment of the trial court in the prior appeal called for reinstatement of the enforce-

---

[2] A portion of the property had previously been sold to Westminster Presbyterian Retirement Community, Inc. and River Ridge Community Association, Inc. Those parcels were purchased subject to the liens in issue and are not a subject of litigation here.

ment action and directed that proceedings in that action would continue. Those rulings necessarily contemplated reinstatement of the lien upon which the suit was based. As in *Fox*, conditioning retroactive application of the reinstated lien on the absence of any prejudice to a third-party purchaser for value without notice equitably balances the interests of the lien holder and any innocent third-party purchaser. Therefore, the trial court did not err in reinstating Air Power's mechanic's lien against the property.

■ We next consider Thompson's argument that the trial court erred in applying the lien retroactively because Virgrun was a bona fide purchaser for value without notice. The parties do not dispute that Virgrun was a bona fide purchaser for value, only whether Virgrun had constructive notice of the lien. Constructive notice in this context may be of two kinds: notice that comes from the deed records, and that which results from a knowledge of facts outside the deed records which should lead the person to knowledge of the ultimate fact. *Orphanoudakis v. Orphanoudakis*, 199 Va. 142, 147, 98 S.E.2d 676, 681 (1957). Air Power contends that Virgrun had constructive notice of both types and, therefore, does not qualify as a bona fide purchaser for value without notice.[3]

First, Air Power asserts that Virgrun was charged with notice, not only of the facts specifically set out in the deed records, but also of other "matters therein suggested which might be disclosed upon prudent inquiry." *Chavis v. Gibbs*, 198 Va. 379, 382, 94 S.E.2d 195, 197 (1956). Air Power claims that the December 13, 1991, court order dismissing its lien recorded in the deed records put Virgrun on notice of Air Power's lien because Air Power's counsel endorsed the order as "Seen and excepted to." This endorsement, Air Power argues, should have alerted Virgrun and caused it to examine the court records, which would have revealed the appellate proceedings in the case. Those proceedings included this Court's decision reinstating the enforcement action, issued at least three months *prior* to Virgrun's purchase of the property. Therefore, Air Power asserts that Virgrun should be charged with constructive notice of Air Power's lien and cannot qualify as a bona fide purchaser for value without notice.

The requirement of prudent inquiry recited in *Chavis* does not apply under the facts of this case. In *Chavis*, the purchaser's deed

---

[3] Although Air Power asserts that the trial court made an "implicit finding" that Virgrun was not a bona fide purchaser for value without notice, there is nothing in the record which reflects such a finding or the basis for it.

specifically recited that it was subject to a deed of trust placed on the property by a prior owner. Having notice of the deed of trust, the purchaser should have inquired as to whether the deed had been satisfied or the property sold, but failed to do so. *Id.* at 387, 94 S.E.2d at 200.

Other cases imposing the duty of prudent inquiry begin with an affirmative statement in the deed records revealing an apparently outstanding interest encumbering the property. *See e.g., Allen v. Green,* 229 Va. 588, 594, 331 S.E.2d 472, 476 (1985) (express reservation of right to remove building from land conveyed); *Fox,* 229 Va. at 386, 329 S.E.2d at 9 (judgment, later erroneously released, appeared on land records at time equitable mortgage filed). In the present case, the records contained no affirmative statement of interest, only the court order that cancelled a lien previously filed against the property. The mere statement at the foot of the court order that the order was "Seen and excepted to" by Air Power's counsel is not an indication of any affirmative interest attaching to the property sought to be purchased. Taken as a whole, there was no indication of any affirmative interest held by Air Power against the property at the time Virgrun purchased the property. Additionally, Donald E. Kidwell, a title examiner qualified as an expert at the trial, testified that based on the certificate of release and order filed in the deed records and on the fact that the 30-day period for appealing the December 19, 1991, decision had expired at the time those documents were filed in the deed records, a prudent title examiner in Virginia would not have looked back to the records of the trial court.

Because there was no affirmative indication in the record that the property was subject to Air Power's lien, the requirement of prudent inquiry is inapplicable in this case. Therefore, we hold that Virgrun cannot be charged with constructive notice of Air Power's lien by virtue of counsel's endorsement on the December 19, 1991, order dismissing its enforcement action.

Air Power also asserted that Virgrun had constructive notice of facts outside the deed records regarding the status of Air Power's mechanic's lien by virtue of its relationship to American Security Bank (the Bank). Relying on testimony by Michael Capretti, vice-president of Ken Thompson and Associates, that he "thought" Virgrun was a corporation set up by the Bank to take title to the property at the foreclosure sale, Air Power concludes that Virgrun is charged with the same level of information as the

Bank. The general rule is that the knowledge of the parent corporation is not imputed to its subsidiary nor would knowledge acquired by an agent or officer of Virgrun while acting on behalf of the Bank be imputed to Virgrun unless a sufficient nexus between them is shown. 3 William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 814.10 (perm. ed. rev. vol. 1994). Nexus sufficient to provide an equitable reason for disregarding the separate corporate existences is generally established by showing control, interaction, or other similar involvement between the corporations or their agents. There is no evidence in this record regarding the incorporation of Virgrun, identifying the officers, directors, or shareholders of Virgrun or the Bank, showing interlocking directors, or evidencing any other indicia of the involvement or relationship between the two corporations. Therefore, even assuming Virgrun was a subsidiary of the Bank, that legal relationship alone does not impute the Bank's knowledge of the litigation involving Air Power's lien to Virgrun.

■ In this case, there are no allegations of fraud and no evidence that Virgrun had actual notice of the litigation over the status of Air Power's lien. Accordingly, Virgrun was a bona fide purchaser for value without notice. Therefore, the trial court erred by retroactively applying Air Power's mechanic's lien to the property purchased by Virgrun.

## II. EFFECT OF AUTOMATIC STAY IN BANKRUPTCY

In its second assignment of error, Thompson asserts that Precast and A&P are barred from enforcing their mechanics' liens because they filed their enforcement actions beyond the six-month filing limitation fixed in Code § 43-17. Precast and A&P respond that their enforcement suits were subject to the automatic stay imposed when Land Works filed its petition in bankruptcy and those actions could not be filed until entry of the bankruptcy court order excluding them from the stay. Thompson rejects this position, arguing that Land Works was not a necessary party to the enforcement actions and, therefore, the bankruptcy stay did not prevent Precast and A&P from pursuing those actions.

The dispositive question, however, is not whether Land Works was a necessary party to the enforcement actions, but whether the

enforcement actions were subject to the bankruptcy stay.[4] Resolution of this question depends upon a determination of the nature of the estate of the debtor, which is a matter of federal bankruptcy law.

The bankruptcy court made no determination whether the enforcement actions of Precast and A&P had been stayed by the bankruptcy action when it entered an order releasing Precast and A&P from the stay. However, the United States Bankruptcy Court for the Western District of Virginia has addressed the issue and concluded that the stay prevents subcontractors in the position of Precast and A&P from filing bills of complaint to enforce their memoranda of mechanics' liens. *In re Richardson Builders, Inc.*, 123 B.R. 736 (Bankr. W.D. Va. 1990).

In *Richardson*, the issue before the court was whether the filing of a bankruptcy petition by a general contractor stays a mechanic's lien enforcement action, when the general contractor does not own the property against which the lien has been filed. *Id.* at 737. The *Richardson* court determined that one of the purposes of the stay is "to protect creditors by insuring equality of distribution" by prohibiting any change in the rights and priorities of creditors. *Id.* at 738. The *Richardson* court concluded that:

> [e]ven if a general contractor would not be considered a necessary party under Virginia law, actions brought under the Virginia mechanic's lien statutes necessarily involve or affect property of the estate, or property in the possession of the estate, within the broad scope of section 362(a). It is clear that any sums due from the owner to the general contractor-debtor at the time the bankruptcy petition was filed are the property of the estate.

*Id.* at 740; *accord In re R.E. Tull & Sons, Inc.*, 25 B.R. 709 (Bankr. D. Md. 1982); *In re Shore Air Conditioning & Refrigeration, Inc.*. 18 B.R. 643 (Bankr. D. N.J. 1982).

---

[4] Even if a state court determined that a general contractor in bankruptcy was a proper party but not a necessary party to an action, joinder of the general contractor may be necessary to resolve any issues relative to the interests of the general contractor. Yet, if the bankrupt debtor/general contractor was joined in the state action, the lienor runs the risk of violating the bankruptcy stay and subjecting itself to sanctions. See *In re Nash Phillips/Copus, Inc.*, 78 B.R. 798, 802-03 (Bankr. W.D. Tex. 1987).

■ At the time the petition in bankruptcy was filed, Land Works had an inchoate mechanic's lien against the property based on amounts still owed it by Thompson. Applying the principle defined in *Richardson*, we hold that this right constituted property of the debtor's estate and, consequently, the stay imposed by the bankruptcy code was implicated when Precast and A&P sought to enforce their liens against the property. Therefore, we will affirm the trial court's holding that A&P and Precast timely filed their suits to enforce their mechanics' liens against the property.

## III. PAYMENT DEFENSE

Thompson's third assignment of error involves the application of Code § 43-7. That section provides in part

> But the amount for which a subcontractor may perfect a lien under this section shall not exceed the amount in which the owner is indebted to the general contractor at the time the notice is given, or shall thereafter become indebted to the general contractor upon his contract with the general contractor for such structure or building or railroad.

The section also specifically provides that the owner may raise full or partial payment to the general contractor as an affirmative defense to the subcontractor's lien.

As a basis for its affirmative defense of payment in this case, Thompson maintained that the construction of the sanitary sewer outfall was covered by a written contract executed on January 20, 1990, and that the work performed by these subcontractors was done pursuant to that contract. The amount due under that contract, $901,232, was paid in full before the owner received notice of the subcontractors' liens, and, therefore, Thompson argues, the property cannot be held liable for the subcontractors' liens. Thompson agrees that it still owes Land Works $153,982. However, Thompson asserts that this debt arose under a separate oral contract for work which did not include the work performed by these subcontractors.

The trial court held that Thompson failed to establish its affirmative defense to the subcontractors' liens. The trial court found that the two contracts were so integrated that they "should be considered as one," that Thompson was indebted to the general contractor for $153,982 at the time it received notice of the sub-

contractors' liens, and that the property was subject to the liens in that amount. Thompson asserts that the trial court erred in combining the contracts and holding that Thompson failed to establish its affirmative defense under Code § 43-7.

In reviewing the decision of the trial court sitting as the trier of fact, we apply the well-established principle that the trial court's decision is entitled to the same weight as if it were a jury verdict and may be reversed only if it is plainly wrong or without evidence to support it. *Carter v. Carter*, 223 Va. 505, 508-09, 291 S.E.2d 218, 220 (1982). Furthermore, statutes providing for the enforcement of mechanics' liens are remedial and are to be liberally construed. *American Standard Homes v. Reinecke*, 245 Va. 113, 119, 425 S.E.2d 515, 518 (1993).

The record shows that the parties had anticipated Land Works would be the general contractor for construction of River Ridge's entire water and sewer utility system. Thompson and Land Works executed a written contract on January 20, 1990, for the construction of the sanitary sewer outfall, a part of the subdivision's utility system. In addition to the sewer outfall itself, associated activities such as constructing feeder sewer lines to the outfall and grading and excavation work were necessary to complete the utility system. This associated work was referred to generally as the "Section 1" work. No separate written contract was executed covering the Section 1 work. The unit price figures in the written contract, however, were bid based on construction of a water and sewer utility system for the entire subdivision, and were used in billing Section 1 work.

Neither Land Works nor Thompson differentiated the work on the basis of separate and distinct contracts. Land Works structured its internal record-keeping system to reflect invoices and payments by job numbers, not by reference to separate contracts. The record indicates that Job 199 referred to work performed through August 15, 1990, and Job 204 referred to work after that date. The sewer outfall was completed by the end of July 1990, which was not coterminous with the period covered by the work designated as Job 199.

Thompson's internal cost accounting system differentiated between types of work, such as clearing and grubbing, or siltation and erosion control, necessary for both the outfall and Section 1 work, but did not assign the work to either the written or oral contract. Furthermore, the releases prepared by Thompson all ref-

erenced the "Project: River Ridge" and stated they were for labor and materials supplied to "said Building" defined as "the utilities for the entire subdivision."

The record also shows that subcontractors had no indication of separate and distinct contracts, and consequently, did not structure their work or records to correspond to separate contracts. The subcontractors knew the project only as River Ridge, and provided materials and equipment for the water and sewer system as a whole. Construction of the sewer outfall required building access roads, clearing by dynamite, establishing burn pits, and other earth moving activities which were not restricted to the specific easement on which the sewer outfall itself was located. Precast, Vulcan, and A&P provided materials to Land Works which Land Works then incorporated into the project.

Based on this record, we reject Thompson's position in the first instance because the evidence reflects that these subcontractors provided goods both for the construction of the sewer outfall and for Section 1 work. More importantly, considering (1) the lack of differentiation between the two contracts in the record-keeping methods utilized by the owner and general contractor, (2) the subcontractors' lack of knowledge and control over the allocation of goods and services to a specific contract, and (3) the language in the release for both the sewer outfall and Section 1 payments that materials were provided for "the utilities for the entire subdivision," we find that the trial court did not err in holding that there was only one contract as to the owner and the subcontractors.

Thompson argues, however, that the trial court could not combine the two contracts as a matter of law because Code § 43-7 requires that each contract between the owner and the general contractor must be considered separately. None of the cases on which Thompson relies for this proposition, however, involves the type of contracts and construction at issue in this case. None involves contracts and work so intertwined in the construction of a single structure, and, with the exception of a single case, none involves two or more contracts for a single building or structure.

The single case cited by Thompson which implicates a second contract involving the same building is *Schrieber, Sons & Co. v. Citizens Bank*, 99 Va. 257, 38 S.E. 134 (1901). Thompson points to a statement in the *Schrieber* opinion, that work which is "a separate and distinct transaction, outside of and apart from the original building contract" should not "be considered in connec-

tion therewith," to support his argument that separate contracts cannot be combined. *Id.* at 260, 38 S.E. at 135. Put in the context of the facts and issues presented in *Schrieber*, this statement does not control the result in the instant case.

The issue in *Schrieber* was the amount that the owner owed the general contractor, thereby establishing the amount available to satisfy the subcontractors' liens. The subcontractors sought to include $1,069 as part of the building contract price. This amount was incurred as a result of the owner's request for extra work on the building by the general contractor. The Court in *Schrieber* rejected the subcontractors' argument, stating that the work furnished for the $1,069 was "not covered or contemplated by the contract" and that the work was paid for as it was completed by the general contractor. *Id.*

In contrast to the factual situation in *Schrieber*, the parties here do not dispute the amount that the owner owes the general contractor. Additionally, as set out above, the oral contract covering the Section 1 work was not "a separate and distinct transaction," outside of and apart from the written contract in this case. Under the facts in this case, the holding in *Schrieber* regarding the treatment of separate contracts is inapposite and does not require that the oral and written contracts here be treated separately.

■ The trial court's decision does not conflict with either *Schrieber* or with Code § 43-7. As noted earlier, statutory provisions involving enforcement of mechanics' liens are remedial in nature and are to be liberally construed. Section 43-7 is an integral part of the balance struck between the interests of subcontractors and property owners. In circumstances where a general contractor fails to pay for the goods and services provided by the subcontractors, the General Assembly has determined that the subcontractors should not be required to rely on the general contractor for satisfaction of their liens, but should be allowed to file their liens directly against the property. Under these circumstances, it is not unusual that the subcontractors' liens amount to more than the amounts owed the general contractor by the owner under their contract. To insure that the owner will not have to pay twice for the same work, the General Assembly limited the amount of the subcontractors' recovery to the amount of outstanding indebtedness between the owner and general contractor.

■ The holding of the trial court does not require the owner to pay twice for the goods and services received or to pay more than

the amount it owed the general contractor when it was notified of the subcontractors' liens.

In summary, we will reverse the trial court's judgment holding that Air Power's mechanic's lien is valid and enforceable against that portion of the property purchased by Virgrun and will affirm the judgment holding that the mechanics' liens filed by A&P, Precast, and Vulcan are valid and enforceable against the property.

*Affirmed in part,*
*reversed in part,*
*and final judgment.*