Present:  All the Justices

RICHFOOD, INC., ET AL.

v. Record No. 971461    OPINION BY JUSTICE CYNTHIA D. KINSER
                                          April 17, 1998
DENNIS JENNINGS, ET AL.

FROM THE CIRCUIT COURT OF HANOVER COUNTY
Richard H. C. Taylor, Judge


In this case, we address the scope of claims encompassed in a release and whether a subsidiary corporation that did not sign the release is nevertheless bound by it.  Because the release applies only to claims that arose prior to its execution and because a subsidiary is separate and distinct from its parent corporation, we will reverse the judgment of the circuit court.

I.

The material facts relevant to this appeal are not disputed.  Richfood, Inc., is a wholesale food distributor providing goods and services to retail grocery stores.  Market Insurance Agency, Inc., is a wholly-owned subsidiary of Richfood and provides insurance to grocery stores.  Richfood, Dennis B. Jennings, and Paul H. Dembinski were shareholders of Bold Horizons, Inc., which operated a grocery store.

Market Insurance prepaid the annual premium on Bold Horizons' workers' compensation insurance policy.  Richfood

then billed Bold Horizons for the premium on a monthly basis and credited Bold Horizons' payment to Market Insurance.

In August 1994, Richfood, Jennings, Dembinski, and Bold Horizons entered into a stock purchase agreement with Farm Fresh, Inc., for the sale of Bold Horizons. In order to settle and compromise certain claims, Richfood, Jennings, Dembinski, and Bold Horizons also executed a Settlement Agreement and General Release dated September 23, 1994 (the Agreement).[1] The provision of the Agreement at issue in this case, paragraph 3.a., states the following:

> Richfood hereby releases, acquits and forever discharges The Jennings, Dembinski and their agents, attorneys-at-law and attorneys-in-fact, from any and all claims, debts, liabilities, demands, obligations, costs, fees, expenses, damages, actions and causes of action, of whatever kind or nature, whether known or unknown, based upon, arising out of or connected with anything whatsoever done, omitted or suffered to be done by or for any of them, based on, arising out of or in connection with any relationship or dealings related in any way to Bold Horizons or the "Food 4 Less" store located at 4001 Virginia Beach Boulevard, Virginia Beach, Virginia, whether such claims are known or unknown, suspected or unsuspected or otherwise whatsoever.

The sale of Bold Horizons effected a cancellation of the workers' compensation insurance policy as of August 30,

---

[1] Several other individuals, not parties to this case, also signed the Agreement.

1994.  At that time, a portion of the prepaid premium had not been used.  Consequently, in May 1995, the insurance carrier issued a refund check to Richfood in the amount of $27,950, which represented the unused premium prepaid by Market Insurance.  A Richfood employee forwarded the refund check to Farm Fresh, and Farm Fresh subsequently paid the proceeds of the check to Jennings and Dembinski.

Upon discovering that Jennings and Dembinski had received the proceeds from the refunded premium, Richfood and Market Insurance demanded that Jennings and Dembinski return the proceeds.  Jennings and Dembinski, however, refused.  Richfood and Market Insurance commenced the instant action, seeking reimbursement of the refund.

In response, Jennings and Dembinski filed grounds of defense and a motion for summary judgment.  In their motion, they argued that the Agreement bars the claim of Richfood and Market Insurance.

After considering the pleadings, the Agreement, the written submissions of the parties, and the argument of counsel, the circuit court determined that the Agreement was unambiguous and discharged Jennings and Dembinski "from liability to Richfood and Market Insurance for claims and causes of action arising in the future and for wrongful conduct occurring after the execution of the Release

because the alleged wrongful conduct was connected with the matters referred to in the Release . . . ." Accordingly, in an order dated April 21, 1997, the court granted Jennings' and Dembinski's motion for summary judgment. Richfood and Market Insurance appeal.

## II.

Jennings and Dembinski assert that the Agreement discharges the claim of Richfood and Market Insurance even though the parties executed the Agreement several months before Jennings and Dembinski received the proceeds from the insurance premium refund. Jennings and Dembinski claim that paragraph 3.a. releases all claims based on both past and future conduct between the parties relating to the operation of Bold Horizons' grocery store and that the disputed insurance premium refund resulted from or was a part of the operation of that business.

Alternatively, Jennings and Dembinski argue that even if the Agreement does not apply to conduct occurring after execution of the Agreement, the claim asserted by Richfood and Market Insurance in this case existed prior to the date of the Agreement. According to Jennings and Dembinski, the insurance premium refund was a "known account receivable as of August 30, 1994," when the workers' compensation insurance policy was canceled, and that future wrongdoing

4

is, therefore, not at issue.  We disagree with both arguments.

"The scope of a release agreement, like the terms of any contract, is generally governed by the expressed intention of the parties."  First Security Federal Savings Bank, Inc. v. McQuilken, 253 Va. 110, 113, 480 S.E.2d 485, 487 (1997).  "Where parties contract lawfully and their contract is free from ambiguity or doubt, the agreement between them furnishes the law which governs them."  Russell Co., Inc. v. Carroll, 194 Va. 699, 703, 74 S.E.2d 685, 688 (1953).

Like the trial court, we find no ambiguity in paragraph 3.a. of the Agreement.  The operative words of that provision are all in the past tense.  Specifically, paragraph 3.a. states that Richfood releases and forever discharges Jennings and Dembinski "from any and all claims, debts, . . . arising out of or connected with anything whatsoever done, omitted or suffered to be done . . . ." (emphasis added).  Thus, paragraph 3.a. of the Agreement, by its terms, covers only claims that already had accrued prior to its execution.  The additional language stating "whether such claims are known or unknown, suspected or unsuspected" speaks of anything "done, omitted or suffered to be done" and discharges such claims regardless of

5

whether they were known by the parties when executing the Agreement.  This language does not extend paragraph 3.a. to claims not in existence on the date of the Agreement.  In sum, paragraph 3.a. of the Agreement does not discharge claims arising out of conduct or events that had not occurred on or before the date of the Agreement.

The alleged wrongful conduct giving rise to the claim now asserted by Richfood and Market Insurance against Jennings and Dembinski did not transpire before the execution of the Agreement.  It may well be that Richfood and Market Insurance, as well as Dembinski and Jennings, knew that there would be a premium refund from the workers' compensation insurance carrier.  However, in the present action, Richfood and Market Insurance allege that Jennings and Dembinski wrongfully retained that refund.  This alleged conduct by Jennings and Dembinski occurred after Richfood initially received the refund check in May 1995, long after the parties executed the Agreement.  Thus, we conclude that the provision of the Agreement at issue does not bar the claim asserted by Richfood and Market Insurance in this case.

We also hold that Market Insurance has a separate, independent basis for asserting that the Agreement does not preclude its claim against Jennings and Dembinski.

Contrary to the position taken by Jennings and Dembinski, Market Insurance's status as a subsidiary of Richfood does not make Market Insurance a party to the Agreement.  As a subsidiary, Market Insurance is a corporate entity separate from Richfood.  See Thompson v. Air Power, Inc., 248 Va. 364, 371, 448 S.E.2d 598, 603 (1994); Beale v. Kappa Alpha Order and Kappa Alpha Alumni Found., 192 Va. 382, 395, 64 S.E.2d 789, 796 (1951).  "The mere showing that one corporation is owned by another or that they share common officers is not a sufficient justification for a court to disregard their separate corporate structure."  Southern States Coop., Inc. v. Dailey, 280 S.E.2d 821, 827 (W. Va. 1981).

Furthermore, Market Insurance did not sign the Agreement, and the terms of the pertinent provision do not include or bind the subsidiaries of Richfood.  In the opening paragraph of the Agreement, Richfood is defined as "Richfood, Inc., Richfood Holdings, Inc., Donald D. Bennett, John E. Stokely, Edgar E. Poore, Daniel R. Schnur, Esq. and David W. Hoover, (collectively, 'Richfood')." Notably, this definition includes neither Market Insurance nor any subsidiaries of Richfood.  In every paragraph of the Agreement in which Richfood is releasing other parties, including paragraph 3.a., the term "Richfood" is never

expanded to include other persons or entities.  However, the recipient of each release is broadened to include its "officers, directors, employees, agents, attorneys-at-law, attorneys-in-fact and all other parties or entities by or through whom they may act."  Thus, the parties understood how to include persons or entities in addition to those specifically identified when it was their intent to do so. "No word or clause will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words aimlessly."  Winn v. Aleda Constr. Co., Inc., 227 Va. 304, 307, 315 S.E.2d 193, 195 (1984).  Thus, we conclude that Market Insurance is not a party to the Agreement and is, therefore, not bound by paragraph 3.a.

For these reasons, we will reverse the judgment of the circuit court and remand for further proceedings consistent with this opinion.

Reversed and remanded.